# EXHIBIT 1


21009915

DWAYNE C. AND LINDA E. SMITH
1547 Kingsport Avenue
Livermore, California, 94550
Telephone: (925) 998-5112
Email: lsmith5648@aol.com

DWAYNE C. SMITH and LINDA E. SMITH,
Pro Per Plaintiffs

**FILED**
ALAMEDA COUNTY

AUG 13 2018

CLERK OF THE SUPERIOR COURT
By _____
Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF ALAMEDA

Case No. RG18916422

DWAYNE C. AND LINDA E. SMITH,

    Plaintiffs,

vs.

NATIONSTAR MORTGAGE, LLC, aka
MR. COOPER; and DOES 1-5 inclusive,

    Defendant.

**VERIFIED COMPLAINT FOR:**

1. **VIOLATION OF CALIFORNIA CIVIL CODE 2923.55 and 2923.5;**
2. **VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17;**
3. **VIOLATION OF CALIFORNIA CIVIL CODE §§ 2924f and 2924b;**
4. **BREACH OF CONTRACT;**
5. **BREACH OF GOOD FAITH AND FAIR DEALING;**
6. **FRAUDULENT MISREPRESENTATION;**
7. **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.;**
8. **WRONGFUL FORECLOSURE, TO SET ASIDE TRUSTEE SALE AND INJUNCTIVE RELIEF; AND,**
9. **QUIET TITLE.**

[DEMAND FOR JURY TRIAL]

COME NOW Plaintiffs, DWAYNE C. SMITH and LINDA E. SMITH, who allege as follows:

-1-
VERIFIED COMPLAINT

**BY FAX**

## PARTIES

1.  At all times material to this Verified Complaint ("Complaint"), DWAYNE C. SMITH and LINDA E. SMITH ("Plaintiffs") were residents of the County of Alameda, in the State of California.

2.  Plaintiffs are informed and believe and thereon allege that NATIONSTAR MORTGAGE, LLC also known as Mr. Cooper and DOES 1 through 5, inclusive ("Defendant") and each of them, are, and at all times relevant hereto were, a DE limited liability company purportedly authorized to conduct business in the State of California and conducting business within this judicial district in the County of Alameda on a regular basis.

3.  Plaintiffs are informed and believe and thereon allege that each and every one of the named and unnamed Defendants herein were the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other, and are accordingly liable for all the acts and omissions of each Defendant.

4.  The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 5, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein, as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiffs. At such time as Plaintiffs learn the true name and capacity of any Defendant named as a DOE herein, Plaintiffs will amend Plaintiffs' Complaint to identify said Defendants, and include accompanying charging allegations.

**VENUE**

5. Plaintiffs are informed and believe and thereon allege that a substantial part of the acts, omissions, transactions and/or occurrences giving rise to the causes of action hereinafter alleged took place within the County of Alameda in the State of California, and that the alleged damages exceed the minimum amount necessary to confer jurisdiction upon this Court.

6. Plaintiffs further allege that the Subject Property, as more specifically alleged hereinafter, is located within the County of Alameda, in the State of California.

**GENERAL ALLEGATIONS**

7. Real Property: At all times material to this Complaint, Plaintiffs were the lawful owner of certain residential real property located at 1547 Kingsport Avenue, Livermore, CA 94550 (hereinafter referred to as the "Subject Property").

8. Primary Residence: The Subject Property is, and at all times material to this Complaint was, Plaintiffs' primary residence and owner-occupied.

9. Deed of Trust Recitals - Written Agreement: On or about June 8, 2007, Plaintiffs entered into a Deed of Trust (hereinafter "DOT" or "Subject Loan") with lender in the total sum of $576,000. The DOT named Homecomings Financial, LLC as the Lender; Mortgage Electronic Registration Systems ("MERS") as the Beneficiary; Landamerica Southland Title as the Trustee; and, Plaintiffs as the Borrowers. A true and correct copy of this DOT is attached hereto as *Exhibit A* and incorporated herein by this reference. Subsequently, Plaintiffs made regular monthly installment payments pursuant to the aforementioned financing agreement.

3

VERIFIED COMPLAINT

10. <u>Assignment/Transfer</u>:  At some point after entering into the Deed of Trust, it appears that the

beneficial interest or servicing was transferred first to U.S. Bank and then to Defendant

NATIONSTAR.

11. <u>Financial Hardship</u>: On or about 4 years ago Plaintiff stopped making payments on the

Subject Loan due to the following hardship(s): Plaintiffs are both in the building industry

(Realtop and Flooring). In 2008 as a result of the economy, their businesses ceased making a

profit.  Plaintiffs went from a 6-figure income to less than $20,000 a year for 2 years.

Plaintiffs had enough money saved to pay the mortgage for 2 years but after 2009 with such

little income it became very difficult. Plaintiffs' businesses started improving but never

recovered completely.  Plaintiffs were focusing all the resources possible to pay their

mortgage.

12. <u>Mr. Balmacoon Was Referred by US Bank</u>:  It appears that at some point after entering into

the Subject Loan, U.S. Bank was assigned the Subject Loan.  In or about 2013, U.S Bank sent

Plaintiffs a letter advising them of a company that could help Plaintiffs through their financial

difficulty. Plaintiffs contacted that company and were advised that the company could help

them secure a modification for the cost of approximately One Thousand Four Hundred

Dollars ($1400.00) per month. Plaintiffs received a call from Mr. Balmacoon from New York

City who was given Plaintiffs' information from the aforementioned company referred by

U.S. Bank.  Plaintiffs began working with Mr. Balmacoon toward the end of 2013 and paid a

$1,000 start-up fee. Mr. Balmacoon advised Plaintiffs to no longer contact U.S. Bank as it

would be too confusing with both Mr. Balmacoon and Plaintiffs communicating with U.S.

Bank. Plaintiffs followed his advice.  In 2015, Plaintiffs buried eight (8) loved ones, which

cost them emotionally and financially. Plaintiffs were forced to rely on Mr. Balmacoon

VERIFIED COMPLAINT

however it appears that every time Plaintiffs were close to being approved for a modification, an occurrence would prevent such approval. Plaintiffs were also told they could not make payments during this time unless Plaintiffs paid the default in full. In 2017, Mr. Balmacoon suggested Plaintiffs place the Subject Property in a Trust and attorneys would manage the trust. This trust would cost One Thousand Two Hundred Dollars ($1200.00) to form and Three Hundred Dollars ($300.00) a month to manage, thereby increasing Plaintiffs' monthly payments to Eight Hundred Dollars ($800.00). Plaintiffs followed direction, yet no trust exists to this day. Plaintiffs were advised it would be best to add their son to title, which Plaintiffs did. Unbeknownst to Plaintiffs, Mr. Balmacoon filed a Bankruptcy Petition in New York to prevent the Subject Property from proceeding to foreclosure sale. Plaintiffs began getting notices in the mail informing them of this occurrence.

13. <u>Modification Attempts</u>:  During this time, i.e. from 2013 to present day, Plaintiffs continuously submitted complete loan modification applications.

14. <u>Notice of Default</u>:  On or about February 10, 2017, Kari Sheehan as authorized representative for Aztec Foreclosure Corporation, executed a fraudulent Notice of Default based upon a 2923.55 declaration executed on **<u>December 10, 2013 – nearly 3 ½ years earlier</u>**!  This unlawful Notice of Default was recorded on February 14, 2017.  A true and correct copy of this NOD is attached hereto as ***Exhibit B*** and incorporated herein by this reference.

15. <u>2017 Notice of Trustee Sale</u>:  On May 27, 2017 Elaine Malone as assistant vice-president to Aztec Foreclosure, Defendants' authorized agent, executed a fraudulent Notice of Trustee Sale, which was recorded on May 30, 2017.  This notice is fraudulent as following a facially defective and invalid Notice of Default. A true and correct copy of this May 30, 2017 NOTS is attached hereto as ***Exhibit C*** and incorporated by this reference.

VERIFIED COMPLAINT

16. <u>Never Received Notice of Upcoming Sale Despite Receiving the NOD in 2017</u>:  U.S. Bank and Defendant NATIONSTAR always sent foreclosure notice(s) via certified mail (as required), along with several copies via regular mail.  Oddly in May 2018, Plaintiffs never received any notice regarding the upcoming trustee sale, which took place on or about June 5, 2018.

17. <u>Notice that Sale Had Occurred, Received After the Fact</u>:  On or about June 4, 2018, Plaintiffs and/or their agent spoke with an authorized agent at Defendant NATIONSTAR who advised that a sale was not scheduled to proceed. When Plaintiffs returned home after a short missionary trip on June 11, 2018, there was a notice posted on their door from the Defendant, stating that their home had been sold. A true and correct copy of this notice is attached hereto as *Exhibit D* and incorporated herein by this reference.

18. <u>Unlawful Trustee Sale Took Place and now in Escrow</u>:  An unlawful trustee sale occurred on June 5, 2018, and Defendant NATIONSTAR "purchased" the Subject Property via a credit bid.  Defendants are now attempting to quickly transfer the Subject Property to a third party in an effort to deprive Plaintiffs' of the Subject Property.  Specifically, Defendants have transferred the Subject Property to Paul Singh who is scheduled to close escrow on or about August 22, 2018.  Please be advised that to date, Plaintiffs have not been provided with a Trustee's Deed Upon Sale.

19. <u>Plaintiffs NEVER Provided with Required Notice of Sale</u>: At no point prior to the unlawful trustee sale occurring, were Plaintiffs provided with the required notice of sale in the manner prescribed by Section 2924f and Section 2924b.

20. <u>No Bona Fide Third-Party Purchaser</u>: Despite the fact that the trustee sale took place, Plaintiffs allege there was never any sale of the Subject Property to a bona fide third-party

VERIFIED COMPLAINT

purchaser because Defendant was the foreclosing beneficiary. Despite the fact that Defendants have attempted to transfer the Subject Property to Paul Singh. In or about the end of July or beginning of August, Mr. Singh approached Plaintiffs at the Subject Property and claimed to be the "new owner". Plaintiffs corrected Mr. Singh advising that a sale had not been completed as of yet. Mr. Singh said that escrow was scheduled to close shortly. In response Plaintiffs advised Mr. Singh of the wrongful conduct of Defendant NATIONSTAR and that Plaintiffs were in the process of filing suit thereby placing the Subject Property at the center of litigation. In the event Mr. Singh chooses to close escrow he cannot be deemed a third party purchaser as he is choosing to proceed with the acquisition of the Subject Property despite being aware that it is the subject of litigation. Immediately upon being made aware of the litigation, Mr. Singh should have cancelled escrow. Rather, he chose not to and has since assumed the risk associated with such a consummation of sale of a property that is the subject of a lawsuit.

21. Defendant Fraudulently Misrepresented and Promised That Sale Would not Take Place: Prior to the June 5, 2018 sale of their home, Plaintiffs were explicitly advised that a trustee sale was not scheduled to proceed. Specifically on or about June 4, 2018, when Plaintiffs and/or their agent contacted Defendant NATIONSTAR to determine if a sale was scheduled, they were advised that a sale would not proceed. Plaintiffs were not properly notified of sale until after it had occurred. During Plaintiff's conversation(s) with Defendant's authorized representative, he failed to advise Plaintiffs that a trustee sale was going to take place and instead promised Plaintiffs that a trustee sale would not take place while Plaintiffs' loan modification application was being reviewed.

VERIFIED COMPLAINT

22. <u>Wrongful Conduct</u>:  Plaintiffs alleges upon information and belief that Defendant engaged in the following wrongful conduct: (a) The lender never gave Plaintiffs proper notice of the sale, (b) Plaintiffs discovered they mailed some notices to an address in New Jersey where they do not reside and have never heard of before, and (c) When Plaintiffs called Defendant's representative, he said the sale had been cancelled and no sale date was scheduled. Then, 3 days later the Lender sold the Subject Property.

23. <u>TENDER</u>: Several courts have recognized a general equitable exception to applying the tender rule where it would be inequitable to do so. *Onofrio v. Rice* 55 Cal. App. 4th 413.424 (1997)([w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale); *Robinson v. Bank of America* 12-CV-00494-RMW, 2012WL, 1932842 at 3(N.D. Cal. May 29, 2012) (inequitable to apply tender rule in certain circumstances); *Bowe v. Am. Mortg.Network, Inc.*, CV 11-08381 DDP SHX, 2012 WL 2071759, at 2 (C.D. Cal. June 8, 2012); *Gianniniv.American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at 3 (N.D. Cal. Feb.1,2012).

    a.  Plaintiffs alleges that one or more of the following exceptions to the tender requirement apply herein: (i) the value of Plaintiffs' monetary claims and set-offs against the beneficiary are equal to or greater than the value of the secured debt; (ii) it would be inequitable to impose a tender requirement on Plaintiffs under the circumstances, since the foreclosure proceeded pursuant to blatantly fraudulent and unlawful conduct in direct violation of the Civil Code; and (iii) Plaintiffs did not rely on equity to challenge the foreclosure, as the foreclosure is statutorily invalid in direct violation of the Homeowner's Bill of Rights.

8

VERIFIED COMPLAINT

      b.   Plaintiffs alleges that if necessary, Plaintiffs are willing and able to tender an amount deemed necessary by this Court in order to proceed with Plaintiffs' claims against the Defendant.

### FIRST CAUSE OF ACTION
### FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2923.55 and/or 2923.5
### (Against All Defendants)

24. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 23 herein as though set forth completely in this cause of action.

25. California Civil Code § 2923.5 requires that, prior to execution and recordation of Notice of Default, the mortgagee, beneficiary or authorized representative contact the borrower in person or by telephone in order to assess the borrower's financial situation, explore options for the borrower to avoid foreclosure, and advise borrower as to his/her right to a meeting within fourteen (14) days with the lender to discuss their options further. Section 2923.5 further requires that the NOD contain a Declaration indicating compliance with this requirement.

26. Defendant failed to comply with the requirements of California Civil Code Section 2923.5 by:

    a.  Not contacting the borrowers in person or by telephone in order to assess the borrowers' financial situation and advise them as to their right to a meeting within 14 days prior to executing the NOD; and

    b.  By failing to provide the required declaration indicating compliance with Section 2923.55 or 2923.5.

    c.  By using a declaration executed at least 3 ½ years prior to the execution of the NOD verifying the fact that Defendants did not comply with the intention of the statute, which was to provide Plaintiffs with an opportunity to

27. Defendant never contacted Plaintiffs by telephone and never left a message for them on their voicemail. Defendant never contacted Plaintiffs via mail and advised of their aforementioned rights. In so doing, Defendant failed to comply with the stringent yet patently lucid requirements of the California Civil Code Section 2923.55 (pursuant to which they executed the declaration) or 2923.5 which remains part of the HBOR currently.

28. Any loan modification and/or communications regarding loan modifications received by Plaintiffs was done at their own behest and not by and through the Defendant. The fact that Plaintiffs attempted to receive a loan modification before the NOD was issued does not replace or forgive Defendants duty.

29. Prejudice: As the result of Defendant's failure to comply with Section 2923.55 or 2923.5, Plaintiffs suffered prejudice. Plaintiffs lost ownership and use of the Subject Property to the benefit of Defendant as the Subject Property proceeded to an unlawful trustee sale. Plaintiffs were not made aware of Plaintiffs' right to an in person meeting, which Plaintiffs would have surely requested and attended. Defendants never advised Plaintiff of direct communication regarding a modification. Defendant was required to communicate Plaintiffs' options to avoid foreclosure prior to the execution of the NOD, but instead simply failed to communicate any such option forcing the Subject Property to an unlawful trustee sale. Further verifying this failure to comply is the fact **that Defendants relied on a Declaration executed in 2013, when the NOD was executed in 2017**. Plaintiffs should have been provided with all of Plaintiffs' options to avoid foreclosure, and advised as to a manner to achieve such option(s), including the right to discuss all such options in person within fourteen (14) days, as was Plaintiffs' right, and as to which Plaintiffs were never advised, all to the benefit of the Defendant. Had Defendant complied with Section 2923.5, Plaintiff would have been advised

of their right to an in person meeting and various options to avoid foreclosure.  Plaintiffs could have and would have qualified for a modification pursuant to Defendant's guidelines.

30. Injunctive Relief: Due to Defendant's non-compliance with Civil Code Section 2923.55 or 2923.5, Plaintiffs are likely to succeed in Plaintiffs' claim for relief. Plaintiffs seeks injunctive relief rescinding the unlawful trustee sale and preventing Defendant from selling or transferring their interest in the Subject Property to another party. The hardship incurred by Plaintiffs if the Subject Property and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendant if the foreclosure process is reinitiated following the conclusion of the subject litigation, is transitory and minimal. Plaintiffs are entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

## SECOND CAUSE OF ACTION
### FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17
### (Against All Defendants)

31. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 30 herein as though set forth completely in this cause of action.

32. C.C.C. Section 2924.17 Requirements: California Civil Code Section 2924.17 states the following in pertinent part: (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence. (b) Before recording or filing any of the

11

VERIFIED COMPLAINT

documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed

competent and reliable evidence to substantiate the borrower's default and the right to

foreclose, including the borrower's loan status and loan information.

33. <u>Material Violation of 2924.17</u>: Defendants violated C.C.C. Section 2924.17 by not properly

reviewing Plaintiffs' loan information, and verifying whether Defendant had the right to

foreclose pursuant to competent and reliable evidence.  Importantly, Defendants failed to rely

on a valid and competent 2923.55 Declaration and instead executed the 2017 NOD pursuant

to a 2013 declaration, verifying the NOD's invalidity.  Specifically, Defendants engaged in

the following unlawful conduct in direct violation of Section 2924.17:

    a. Executing and recording the fraudulent Notice of Default pursuant to an invalid

       declaration from 2013; and thereafter executing and recording a fraudulent and invalid

       Notice of Trustee Sale pursuant to the facially invalid NOD; and,

    b. Failing to confirm whether Plaintiffs had, in fact, been contacted to assess their

       financial situation and non-foreclosure alternatives.

34. <u>Prejudice</u>: As the result of Defendant's failure to comply with Section 2924.17, Plaintiffs have

suffered prejudice. Plaintiffs have lost ownership and use of the Subject Property to the

benefit of Defendant as the Subject Property proceeded to an unlawful trustee sale.  Plaintiffs

were not made aware of Plaintiffs' options to avoid foreclosure in a timely manner, and

incurred additional fees, costs and interest, to the benefit of Defendant. Defendant never

advised Plaintiffs of Plaintiffs' options or right to an in person meeting or direct

communication regarding a modification. Moreover, Defendant failed to substantiate

Defendant's right to foreclose.  Defendant was required to communicate Plaintiffs' options to

avoid foreclosure prior to the execution of the NOD, but instead simply failed to communicate

any such option forcing the Subject Property to an unlawful trustee sale. Plaintiffs should

have been provided with all of Plaintiffs' options to avoid foreclosure, and advised as to a

manner to achieve such option(s), including the right to discuss all such options in person

within fourteen (14) days, as was Plaintiffs' right, and as to which Plaintiffs were never

advised, all to the benefit of Defendant.   Had Defendant complied with Section 2924.17,

Plaintiffs would have been advised of their right to an in person meeting and various options

to avoid foreclosure; additionally, Defendant would have substantiated any alleged default

and Defendant's right to foreclose, which would have prevented Defendant from foreclosing

as they did not have any such right as alleged in detail in this Complaint.  Plaintiffs could

have and would have qualified for a modification pursuant to Defendant's guidelines.

## THIRD CAUSE OF ACTION
### FOR VIOLAITON OF CALIFORNIA CODE  §§ 2924f and 2924b
#### (Against All Defendants)

35. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 34 herein as though set forth completely in this cause of action.

36. Pursuant to Civil Code Section 2924f and 2924b, Defendant was required to provide notice of

the trustee sale via certified mail and posting.

37. Violation:  At no point did Defendant or their agents mail to Plaintiffs via certified mail or

post on a conspicuous location on the Subject Property a NOTS as required by the above-

referenced sections of the Civil Code. Simultaneously Defendants denied that a trustee sale

was scheduled to proceed when Plaintiffs and/or their agent contacted Defendants to

determine whether a sale was scheduled.  Accordingly, Plaintiffs were completely without

any notice that Subject Property was scheduled to proceed to sale on June 5, 2018.

13
VERIFIED COMPLAINT

38. <u>Prejudice:</u>  Plaintiffs have been prejudiced by Defendant's failure to comply with the Civil Code as they have lost title to the Subject Property and are in the process of losing possession.  Defendants "purchased" the Subject Property via a credit bid and are now in the process of transferring the Subject Property to a third party named Paul Singh for which escrow is scheduled to close on August 22, 2018.  As such, Plaintiffs have already lost title to the Subject Property and now stand to lose possession as well demonstrating clear prejudice.  Defendant's failure to serve the Notice of Sale as required combined with their affirmative denial that a sale was scheduled to take place has severely prejudiced Plaintiffs.

39. <u>Injunctive Relief:</u>  Plaintiffs seek injunctive relief preventing escrow from closing on August 22, 2018.

40. <u>Damages:</u>  As a result of Defendant's violation of Section 2924 Plaintiffs have been damaged in a sum to be determined according to proof at trial.

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT
#### (Against All Defendants)

41. Plaintiffs re-allege and incorporate by reference the general allegations set forth above in paragraphs 1 through 40 herein as though set forth completely in this cause of action.

42. <u>Deed of Trust Recitals – Written Agreement</u>: Please see *Exhibit A* attached hereto and incorporated herein by this reference.

43. <u>Plaintiffs Allege a Written Agreement with Defendant</u>: Subsequent to entering into the DOT, Plaintiffs allege that Defendant was assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiffs have an agreement with at least one of the above-referenced Parties, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of

<u>14</u>
VERIFIED COMPLAINT

that agency and capacity at all times material, and with the express or implied knowledge

consent, and/or ratification of each other. It is pursuant to this agreement that Defendant has

collected monthly payments on the Subject Loan claiming a beneficial interest in the Subject

Property. ·

44. <u>Defendant Materially Breached the DOT</u>:  Defendant forced Plaintiffs into the foreclosure

process despite the fact that Plaintiffs were not in default thereby breaching the terms of the

DOT.

45. <u>Defendant Also Materially Breached Paragraph 22 of the Deed of Trust</u>:  Defendant

materially breached the DOT by failing to provide Plaintiffs with notice of their right to bring

a lawsuit to allege defenses to the acceleration and sale.  Specifically, the DOT, Paragraph 22,

states in part:

a.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration
following Borrower's breach of any covenant or agreement in this Security
Instrument (but not prior to acceleration under Section 18 unless Applicable Law
provides otherwise).  The notice shall specify: (a) the default; (b) the action
required to cure the default; (c) a date, not less than 30 days from the date the
notice is given to Borrower, by which the default must be cured; and (d) that
failure to cure the default on or before the date specified in the notice may result in
acceleration of the sums secured by this Security Instrument and sale of the
Property. The notice shall further inform Borrower of the right to reinstate after
acceleration and **the right to bring a court action to assert the non-existence of**
**a default or any other defense of Borrower to acceleration and sale.**"
(Emphasis added). Please see Paragraph 22 of *Exhibit A* attached hereto and
incorporated herein by this reference.

b.  Additionally, in the second section of paragraph 22, the DOT states:·

If Lender invokes the power of sale, Lender shall execute or cause Trustee execute
a written notice of the occurrence of an event of default and of Lender's election to
cause the Property to be sold. Trustee shall cause this notice to be recorded in each
county in which any part of the Property is located. **Lender or Trustee shall mail**
**copies of the notice as prescribed by Applicable Law to Borrower and to the**
**other persons prescribed by Applicable Law.**" (Emphasis added).  Please see

15
VERIFIED COMPLAINT

Paragraph 22 of *Exhibit A* attached hereto and incorporated herein by this reference.

46. <u>NOD is Fraudulent</u>:  Rather, the NOD fraudulently states: "Following the expiration of the time period referred to in the first paragraph of this notice… you have **only the legal right to stop the sale of your property** by paying the entire amount demanded by your creditor." (Emphasis added).  Please *Exhibit B* at page 2, paragraph 2, attached hereto and incorporated herein by this reference.  The NOD is thus facially fraudulent, since Plaintiffs' only legal right to stop the sale is not by payment only (especially since there was no actual default to pay), as Defendant was required to provide Plaintiffs with notice of their right to bring a court action to challenge the default as dictated by Paragraph 22 of the Deed of Trust.  *See Exhibit A*

47. <u>Acceleration Before Foreclosure</u>:  Just to clarify, the DOT contains a clause that requires the lender to send a notification to Plaintiffs informing them that the Subject Loan is in default before it was allowed to accelerate the Subject Loan and proceed with foreclosure. More importantly, this notice was required to include language advising Plaintiffs that they were entitled to bring a court action asserting defenses to the acceleration and sale.

48. <u>Plaintiffs Never Received any Notice</u>:  Defendant clearly did not comply with Paragraph 22 of the DOT. Defendant never prepared or provided Plaintiffs with any such notice. Moreover, Plaintiffs never received the NOD or NOTS regarding the June 5, 2018 sale, which would have provided Plaintiffs with notice of any purported default or breach, or a notice of Plaintiffs' right to file a lawsuit to challenge the default.

49. <u>Damages</u>:  As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been prejudiced, have suffered, and will continue to suffer, general and special damages including the loss of their home from foreclosure, loss of equity in the Subject Property,

costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as interest, fees and costs including, without limitation, attorney's fees.

## FIFTH CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

50. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 49 herein as though fully set forth in this cause of action.

51. Covenant of Good Faith: Plaintiffs allege that at all times there existed an implied covenant of good faith and fair dealing requiring Defendant to safeguard, protect, or otherwise care for the assets and rights of Plaintiffs. Said covenant prohibited Defendant from activities interfering with or contrary to the rights of Plaintiffs. In addition to being implied in the above-referenced DOT, under the statutory scheme for loss mitigation alternative review and non-judicial foreclosure, the covenant of good faith is coextensive with Defendant's duty to properly review Plaintiffs for loss mitigation alternatives and conduct the foreclosure proceedings fairly, openly and in good faith.

52. Deed of Trust Recitals – Written Agreement: Please see *Exhibit A* attached hereto and incorporated herein by this reference.

53. Plaintiffs Allege a Written Agreement with Defendant: Subsequent to entering into the DOT, Plaintiffs allege that Defendant was assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiffs have an agreement with at least one of the above-referenced Parties, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of

17

that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other. It is pursuant to this agreement that Defendant has collected monthly payments on the Subject Loan claiming a beneficial interest in the Subject Property.

54. <u>Breach of Good Faith and Fair Dealing</u>:  Defendant's interfered with Plaintiffs' right to receive the benefits of the above-referenced agreement and breached the covenant of good faith and fair dealing implied in the DOT, by doing the following:

a.   Failing to provide valid documents to proceed with foreclosure, including a valid NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead, Defendant recorded the false, fraudulent and improper NOD, NOTS and TDUS, when there was no default and Plaintiffs had not been contacted to asses their financial situation or discuss non-foreclosure alternatives;

b.   Failing to advise Plaintiffs of their right to bring legal action to challenge the acceleration and instead fraudulently advising them that their only right to prevent the sale was to pay the amount demanded by Defendant in the NOD despite the fact that they were not actually in default;

c.   Failing to contact Plaintiffs to assess their financial situation and to inquire about other non-foreclosure alternatives;

d.   Commencing foreclosure proceedings upon the Subject Property lawfully belonging to Plaintiffs without complying with the stringent requirements of the Civil Code;

e.   Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting a trustee sale; and,

18
VERIFIED COMPLAINT

f.   Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of

trustee's sale.

55. Damages:  As a direct and proximate result of Defendant's breach of the covenant of good

faith and fair dealing, Plaintiffs have been prejudiced, have suffered, and will continue to

suffer, general and special damages including the loss of the Subject Property, loss of equity

in the Subject Property, costs and expenses related to protecting themselves, reduced credit

scores, unavailability of credit, increased costs of credit, reduced availability of goods and

services tied to credit ratings, increased costs of those services, as well as interest, fees and

costs including, without limitation, attorney's fees and costs, all in an amount according to

proof at the time of trial.

## SIXTH CAUSE OF ACTION
## FOR FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

56. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 55 herein as though set forth completely in this cause of action.

57. Defendant's made various fraudulent and intentional misrepresentations of fact, including but

not limited to the following:

a.   Fraudulent Notice of Default: the NOD fails to comport with paragraph 22 of the

DOT, which states in part:

i.   **Acceleration; Remedies.** Lender shall give notice to Borrower prior to

acceleration    following Borrower's breach of any covenant or agreement in

this Security Instrument (but not prior to acceleration under Section 18 unless

Applicable Law provides otherwise). The notice shall specify: (a) the default;

(b) the action required to cure the default; (c) a date, not less than 30 days from

the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. Please see Paragraph 22 of *Exhibit A* attached hereto and incorporated herein by this reference.

ii. The NOD is Fraudulent, as it fraudulently states: "Following the expiration of the time period referred to in the first paragraph of this notice... you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor." Please see *Exhibit B* at page 2, paragraph 3, attached hereto and incorporated herein by this reference. Not only does the NOD fail to provide a valid 2923.5 declaration, thus rendering it facially defective and void, it is also facially fraudulent, since Plaintiffs' only legal right to stop the sale is not by payment only, and Defendants were required to provide Plaintiffs with notice of their right to bring a court action to challenge the default.

b. Fraudulent Advised that Sale Not Scheduled:  On June 4, 2018, an authorized representative for Defendant NATIONSTAR (Plaintiffs are not aware of this authorized representatives name but will be able to ascertain through discovery and amend this cause of action to reflect such name) advised Plaintiffs and/or their agent that a trustee sale of the Subject Property was not currently scheduled.

58. <u>Knowledge of Falsity</u>: At the time Defendant made the aforementioned misrepresentations, they knew they were false and were made solely to induce reliance upon them by Plaintiffs, namely that Plaintiffs believe that the foreclosure process was proceeding in a statutorily valid manner, such that Plaintiffs would not challenge the foreclosure. Defendant further made the representations that a trustee sale was not scheduled to proceed in order for Plaintiffs to refrain from taking any action to prevent the trustee sale from taking place, including borrowing money and reinstating the Subject Loan, filing for Chapter 13 bankruptcy or filing a civil action and seeking injunctive relief preventing the sale.

59. <u>Intent to Deceive</u>: The aforementioned misrepresentations regarding the documents necessary to proceed with foreclosure were made with the intent to deceive Plaintiffs and prevent Plaintiffs from taking precautionary measures to protect Plaintiffs from the foreclosure sale of the Subject Property, and from losing Plaintiffs' interest in the Subject Property. Further evidence of Defendant's intent to deceive is the fact that Defendants executed and recorded a Notice of Default in 2017 pursuant to a 2923.55 Declaration executed in 2013, and that Defendants failed to advise Plaintiff that a trustee sale was scheduled to proceed when Plaintiffs and/or their agents contacted Defendants inquiring as to a sale date.

60. <u>Reliance</u>: Plaintiffs reasonably relied on the above-referenced fraudulent misrepresentations made by Defendant as Defendant was/is a respectable financial institution, alleged beneficiary of the Promissory Note, and the lender, trustee and/or servicer with which Plaintiffs believed they were contractually bound.

61. <u>Reasonable and Detrimental Reliance</u>: Plaintiffs clearly relied on Defendant's misrepresentations to Plaintiffs' detriment as they failed to hire legal counsel, file a civil action prior to the trustee sale and/or file for Chapter 13 bankruptcy and protect and preserve

their interests in the Subject Property in a timely manner prior to the unlawful trustee sale, and

suffered foreclosure to the benefit of Defendants. Alternatively, Plaintiffs failed to borrow

money and reinstate the Subject Loan or file a timely Chapter 13 reorganization prior to the

unlawful trustee sale. All of the aforementioned actions would have preserved Plaintiffs'

interest in the Subject Property prior to the unlawful trustee sale.

62. <u>Damages</u>: As a direct and proximate result of Defendant's fraudulent misrepresentations,

Plaintiffs have been prejudiced, have suffered, and will continue to suffer, general and special

damages including being subjected to the foreclosure process, suffering wrongful foreclosure,

being subjected to an unlawful detainer action and all related attorney's fees and costs in

defending such action, loss of equity in the Subject Property, loss of the Subject Property,

costs and expenses related to protecting themselves, reduced credit scores, unavailability of

credit, increased costs of credit, reduced availability of goods and services tied to credit

ratings, increased costs of those services, as well as fees and costs including, without

limitation, attorney's fees and costs, all in an amount according to proof at the time of trial.

63. <u>Punitive Damages</u>: Defendant's are guilty of oppression, fraud and malice. "Malice" is

defined in the statute as conduct "intended by the defendant to cause injury to plaintiff, or

despicable conduct that is carried on by the defendant with a willful and conscious disregard

for the rights or safety of others." In this case, it is clear that Defendant engaged in despicable

conduct with a willful and conscious disregard for the rights of Plaintiffs by fraudulently

executing documents necessary to proceeded with foreclosure of the Subject Property or

provide notice to Plaintiffs of the foreclosure. Moreover, Defendant's proceeded with a

foreclosure of the Subject Property while Plaintiffs' complete application was still in active

modification review and without having provided Plaintiffs' with a written denial of their

application including the reason(s) for denial and their right to appeal such denial within 30

days. "Oppression" means despicable conduct that subjects a person to cruel and unjust

hardship in conscious disregard of that person's rights." In this case Defendant subjected

Plaintiffs to cruel and unjust hardship by fraudulently executing necessary documents as

indicated in detail herein above, and proceeding with an unlawful trustee sale of the Subject

Property while Plaintiffs' complete loan modification application was in active review as

discussed in detail herein above. Such egregious conduct was to the benefit of Defendant and

resulted in cruel and unjust hardship to Plaintiffs. "Fraud" is "an intentional misrepresentation,

deceit, or concealment of a material fact known to the defendant with the intention on the part

of the defendant of thereby depriving a person of property or legal rights or otherwise causing

injury." It is clear by this thoroughly pleaded cause of action that Defendant engaged in fraud

and thereby unnecessarily forced Plaintiffs to suffer a wrongful foreclosure to the benefit of

Defendant and to suffer potential eviction from their home. The aforementioned behavior

exhibited by the Defendant was despicable, vile, outrageous, and outside the bounds of human

decency, sufficient to justify an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
### SECTIONS 17200 ET SEQ.
### (Against All Defendants)

64. Plaintiffs re-allege and incorporates by reference the general allegations made in paragraphs

1 through 63 herein as though fully set forth in this cause of action.

65. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair

competition, which means and includes any "fraudulent business act or practice . . ." and

conduct, which is "likely to deceive" and is "fraudulent" within the meaning of Section

17200.

66. As more fully described above, the Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

67. Specifically, the Defendants engaged in deceptive business practices with respect to the foreclosure process by conspiring to defraud borrowers. Defendants proceeded with foreclosure without having rendered a written determination of borrowers' loss mitigation applications. Accordingly, borrowers believe their applications are under review, during which time Defendants proceed with a foreclosure in blatant violation of the Civil Code. Specifically, Defendants engage in the following unlawful and fraudulent conduct:

   a. Failing to provide valid documents to proceed with foreclosure, including a valid NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead, Defendants recorded the false, fraudulent and improper NOD, NOTS and TDUS, when there was no default and Plaintiffs had not been contacted to asses their financial situation or discuss non-foreclosure alternatives;

   b. Failing to advise Plaintiffs of their right to bring legal action to challenge the acceleration and instead fraudulently advising them that their only right to prevent the sale was to pay the amount demanded by Defendants in the NOD despite the fact that they were not actually in default;

   c. Failing to contact Plaintiffs to assess their financial situation and to inquire about other non-foreclosure alternatives;

   d. Commencing foreclosure proceedings upon the Subject Property lawfully belonging to Plaintiffs without complying with the stringent requirements of the Civil Code;

24
VERIFIED COMPLAINT

e.   Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting

a trustee sale; and,

f.   Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of

trustee's sale.

68. The Defendants failed to act in good faith as they take fees for services but do not render them

competently and in compliance with applicable law. Defendants proceed with trustee sales

without complying with the stringent requirements of the Civil Code or HBOR and without

providing the necessary and requisite notices prior to proceeding to a trustee sale.  Moreover,

Defendants misrepresent whether a sale is going to take place to intentionally deprive

borrowers of their homes.

69. Additionally, the Defendants engaged in a uniform pattern and practice of unfair and overly-

aggressive servicing that result in the assessment of unwarranted and unfair fees against

California consumers, and premature default often resulting in unfair and illegal foreclosure

proceedings. The scheme implemented by the foreclosing Defendants is designed to defraud

California consumers and enrich the Defendants.

70. The foregoing acts and practices have caused substantial harm to California consumers.

71. The foregoing acts and practices have caused substantial harm to California consumers.

72. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of

the foreclosing Defendants, Plaintiffs and California consumers have suffered and will

continue to suffer damages in the form of unfair and unwarranted late fees, other improper

fees and charges, and negative credit scores.

73. By reason of the foregoing, the foreclosing Defendants have been unjustly enriched and

should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and

VERIFIED COMPLAINT

other California consumers who have been harmed, and/or be enjoined from continuing in

such practices pursuant to California Business & Professions Code Sections 17203 and

17204. Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as

available under California Business and Professions Code Sec. 17200 and related sections.

**EIGTH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE, TO SET ASIDE TRUSTEE SALE**
**AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

74. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 73 herein as if fully set forth in this cause of action.

75. A claim for wrongful foreclosure arises when the lender, mortgagee or authorized agent fails

to comply with the statutory provisions regulating non-judicial foreclosures in California and

proceeds to conduct an invalid trustee sale of the Subject Property.

76. Elements for Action for Damages: The elements of a common-law cause of action for

damages for wrongful foreclosure are: (1) Trustee or mortgagee caused an illegal, fraudulent

or willfully oppressive sale of real property; (2) pursuant to a power of sale contained in a

mortgage or deed of trust; and (3) the Trustor or mortgagor sustained damages. (*Munger v.*

*Moore* (1970) 11 Cal. App. 3d 1, 7; see 4 *Witkin, Sum. Of Cal. Law* (10th ed. 2005) *Secured*

*Transactions in Real Property*, §168.)

77. Tender: Please see Paragraph 23 herein above, incorporated herein by this reference.

78. In this case Defendant caused an illegal, fraudulent and willfully oppressive sale of the

Subject Property pursuant to a power of sale contained in the deed of trust by engaging in the

following conduct:

    a.  Failing to provide valid documents to proceed with foreclosure, including a valid

        NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to

provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead, Defendants recorded the false, fraudulent and improper NOD, NOTS and TDUS, when there was no default and Plaintiffs had not been contacted to asses their financial situation or discuss non-foreclosure alternatives;

b.  Failing to advise Plaintiffs of their right to bring legal action to challenge the acceleration and instead fraudulently advising them that their only right to prevent the sale was to pay the amount demanded by Defendants in the NOD despite the fact that they were not actually in default;

c.  Failing to contact Plaintiffs to assess their financial situation and to inquire about other non-foreclosure alternatives;

d.  Commencing foreclosure proceedings upon the Subject Property lawfully belonging to Plaintiffs without complying with the stringent requirements of the Civil Code;

e.  Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting a trustee sale; and,

f.  Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of trustee's sale.

79. <u>Rescission of Sale and Injunctive Relief</u>: Due to Defendant's non-compliance with the Civil Code as discussed herein above, Plaintiffs are likely to succeed in Plaintiffs' claim for relief. Plaintiffs seeks a rescission of the trustee sale and injunctive relief preventing Defendants from selling or transferring the Subject Property to a third party. The hardship incurred by Plaintiffs if the Subject Property and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendants if the foreclosure process is reinitiated following the conclusion of the subject litigation is transitory and minimal.

Plaintiffs are entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

80.   Damages: As a direct and proximate result of Defendants' wrongful foreclosure of the Subject Property, Plaintiffs have been damaged in a sum to be determined according to proof at Trial. Without limiting the damages as described elsewhere in this Complaint, Plaintiffs' damages arising from this Cause of Action also include loss of the Subject Property and equity, costs and expenses related to protecting themselves, reduced credit score, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to his credit rating, increased costs of those services, as well as fees and costs. Plaintiffs seek damages sufficient to compensate Plaintiffs for all detriment proximately caused by Defendant's willful, fraudulent and oppressive wrongful foreclosure in a sum equivalent to at least the value of the property at the time of the sale in excess of the mortgage and lien against the property (*Munger v. Moore*).

**NINTH CAUSE OF ACTION**
**FOR QUIET TITLE**
**(Against All Defendants)**

81.   Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 80 herein as if fully set forth in this cause of action.

82.   Plaintiffs' Lawful Ownership of Subject Property: Plaintiffs are the sole owners in fee simple of the Subject Property.

83.   Tender: Please see Paragraph 23, hereinabove, which is incorporated herein by this reference.

84.   Defendant Is Not a Third-Party Bona Fide Purchaser in Good Faith: Please see paragraph 20 herein above, which is incorporated herein by this reference.

VERIFIED COMPLAINT

85. <u>Illegally Conducted Trustee Sale</u>: Plaintiffs alleges that the trustee sale was conducted fraudulently and illegally as alleged in detail throughout this Complaint (i.e. invalid NOD due to being facially fraudulent and invalid Declaration from 2013, etc.).

91. <u>Defendants' Adverse Claim</u>: Defendants claim an interest in the Subject Property that is averse to Plaintiffs' interest by operation of an invalid deed that was obtained unlawfully, through fraud and deceit, and without Defendant acting as a bona fide third-party purchaser of the Subject Property in good faith, and for value. Defendant's purported deed and/or any such resulting Trustee's Deed Upon Sale, is pursuant to fraud and unlawful activity and, therefore, is void and without legal effect.

92. <u>Quiet Title</u>: Plaintiffs seek in this action to quiet title against the claim of Defendants, as well as all other Defendants, as to the Subject Property. The claims of Defendant are without merit and through Defendant's own fraud, deceit, and substantial conduct evidencing bad faith, and Defendants have no right, title, or interest whatsoever in the Subject Property, or any part thereof. Plaintiffs seek to quiet title in the Subject Property solely in the name of the Plaintiffs, free and clear of any claimed interest by Defendant and seeks to so quiet title as of the date of the commencement of this above-captioned civil action.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for legal and equitable relief against Defendant(s), as follows:

(1) For a rescission of the trustee sale;

(2) For a temporary and permanent injunction preventing Defendant(s) from transferring or selling the Subject Property to a third party;

(3) For general damages in a sum according to proof;

(4) For special damages, including consequential and incidental damages, in a sum

according to proof;

(5) For attorney's fees and costs;

(6) For punitive damages;

(7) For interest as allowed by law; and,

(8) For such other legal and equitable relief as this Court deems just and proper.

DATED: August 10, 2018                    By: _____

DWAYNE C. SMITH, Pro Per Plaintiff

DATED: August 10, 2018                    By: _____

LINDA E. SMITH, Pro Per Plaintiff

VERIFIED COMPLAINT

## VERIFICATION

1

2   I, DWAYNE C. SMITH, am a Plaintiff in the above-entitled action. I have read the Verified

3   Complaint and know the contents thereof. The same is true of my own knowledge, except as to those

    matters that are therein alleged on information and belief, and as to those matters, I believe them to

4   be true.

5       I declare under penalty of perjury under the laws of the State of California that the foregoing

    is true and correct.

6

7       Executed on this _13th_ day of August, 2018, in the County of Alameda, State of

    California

8

9

10  By: _____

11        DWAYNE C. SMITH, Pro Per Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31
VERIFIED COMPLAINT

**VERIFICATION**

I, LINDA E. SMITH, am a Plaintiff in the above-entitled action. I have read the Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this _18th_ day of August, 2018, in the County of Alameda, State of California.

By: _Linda E. Smith_
LINDA E. SMITH, Pro Per Plaintiff

32
VERIFIED COMPLAINT

Recording Requested By: Homecomings Financial

Return To: Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 047-427920-5

Prepared By: Homecomings Financial
4350 Von Karman Avenue, Suite 100
Newport Beach, CA 92660

_____(Space Above This Line For Recording Data)_____

# DEED OF TRUST

MIN 10 0 0 62 6 04 74 27 92 056

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18. 20 and 21. Certain rules regarding the usage of words used in this document are also
provided in Section 16.

(A) "Security Instrument" means this document, which is dated JUNE 8TH, 2007
together with all Riders to this document.

(B) "Borrower" is

DWAYNE C. SMITH AND LINDA E. SMITH, HIS WIFE, AS JOINT TENANTS

Borrower's address is 1547 KINGSPORT AVENUE, LIVERMORE, CA 94550
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL
NETWORK, INC.)
Lender is a LIMITED LIABILITY COMPANY
organized and existing under the laws of DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005 1501
MFCA7720 (09/2005) / 047.427820-5
   -6A(CA) 10207).01
Page 1 of 15          Initial

VMP Mortgage Forms, Inc.

111111 III d II 11
. c          L

)          a.ICW.a.
7.744711CT

Lender's address is 4350 VON KARMAN AVENUE, ft 10 0
NEWPORT REACH, CA 926 6 0
(D) "Trustee" is LANDAMERICA SOUTHLAND TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS:
(F) "Note" means the promissory note signed by Borrower and dated JUNE 8TH, 2007 The Note
states that Borrower owes Lender FIVE HUNDRED SEVENTY SIX THOUSAND AND
NO/100                                                                                          Dollars
(U.S. $ 576,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  JULY 1ST, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in
the Property."
(H) "Loan" Means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

Lid Adjustable Rate Rider El Condominium Rider      0 Second Home Rider
El Balloon Rider        D Planned Unit Development Rider LI 1-4 Family Rider
0 VA Rider              0 Biweekly Payment Rider     LI Other(s) [specify]


(.1) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final. non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated
clearinghouse transfers.
(M)     "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(0) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

CZ -6A l CA) 10207).01                    Page 2 of 16
h1FCA7770 (09/2006) / 047-427920.5                        ERT.na rfriNe5  1101

(Page 28 of 41)

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                     of ALAMEDA
          [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Parcel ID Number: 097 - 0144 - 038                which currently has the address of
1547 KINGSPORT AVENUE                                              [Street]
LIVERMORE                              [City], California 94550     [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencu••ered, except for encumbrances

Vers -6A(CA) 107071.01                    •rove 3 of 15      Initial  MSR - X        Form 3005 1 /01
MFCA7770 (09/2006) / 047-427920.5

                                        CERTICIDAOC EATBd

                                                                        4a-41.

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall bo made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and. this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the lNote; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and. then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the 'payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

02)-6A(CA) (0207).01

MFCA7770 (09/2006) / 047-427920-5

Page 4 of 16

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis, of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held. in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank, Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge, Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Bo .wer a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4,

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire; hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each. time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed *the* cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance barrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not *be* paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

CD•6A(CA) 102071.01          Atp 6 al is          Form 3005 1/01
MFCA7770 (09/2006) / 047-427920-5                    CERP.417.I) TG E7. A "Mt?.

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, *then* Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information)'• in connection with the Loan, Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) payi g any sums secured by a lien which has priority over this Security Instrument; (b) appearing i        , and (c) paying reasonable

MA -6A(CA) 1020401                          Page 7 of 16                               Form 3005 1(01

MFCA7770 (09/2006) I 047-4279204

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agreeS to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. BorroVier is not a party to the Mortgage Insurance,

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums),

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Bo e ver to any refund.

CZ) -6A(CA) (02011.01                                    Pall 0 or l5                              67 7

MFCA7770 (09/2006) / 047-427920-5                                            rD

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Securi, Instrument granted by Lender

C:)·6A(CA) io2o7).ot
MFCA7770 (09/2006) 047.427920.5

Page~ of 1S

CERT TtiA'

(F

Cam'"

11,

to Borrower or any Successor in Interest of Borrower shall' not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co=signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower. who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower •shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees- to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with • Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney? fees, property inspection and valuation fees, In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection witlf this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender, If any notice required by this Security instrument is also required under Applicable Law, the Applicable
Law
requiremen
t will
satisfy the
correspondi
ng.
requiremen
t under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made d y other information RESPA

itt)-6A(CA) (02071.01    P108 11 of 16    Form 3005 1 1/01
MFCA7770 (09/2006) / 047-427920-5    CEMPEO,10 11);.
                                            0

                                            7·—t'

                        C(        .P1·    0.13n.        cc.

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

(C)-6A(CA) 02071.01
MFCA7770 (09/2006) / 047-427920-5

Pp 12 of 16

Form 3005 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result In acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable LaW. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to It.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it' Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the 'statement of obligation as p, vided by Section 2943 of the Civil Code of California.

-6Af CA) tozor ▶ .ot                    Pap 13 of 15                    + Form 3005 1/01

MFCA7770 (09/2006) / 047-427920-5                         ClaTtinl)TO E Cl'

11—4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____   (Seal)
                                                                         -Borrower
                                          DWAYNE C. SMITH

_____          _____   eat) e° //6/g
                                                                         -Borrower
                                          LINDA : SMITH

_____          _____   (Seal)   (Seal)
                          -Borrower                                          -Borrower

_____          _____   (Seal)   (Seal)
                          -Borrower                                          -Borrower

_____          _____   (Seal)   (Seal)
                          -Borrower                                          -Borrower

-6A(CA) (0207).01                    Page 14 of 16                    Form 3005 1101
(11
MFCA7770 (09/2006) / 047-427920-5

(Page 40 of 41)

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of '40,*("c ack

On   kvA.1 10,Q00 1 , before   me;   7s-\kctackcy\ac10/ 100-lrce ugTu bV
Date                                        am and Title of Officer (eg., Jane Wa, Notary Public

personally   appeared _____

                                                Name(s) of Signer(s)

0 personally known to me

roved to me on the basis of satisfactory evidence
to 1 a the person(s) whose name(s) are subscribed
to the within instrument and acknowledged to ma that
tre4iNthey executed the same in h h /their
authorized capacity(ies), and that by         their
signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above

Signature of Notary Public

**TIA MALDONADO**
Commission # 1645874
Notary Public - California
Orange County
My Comm. Expires Jun 21, 2009

───────────────── OPTIONAL ─────────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: '—.11.11..6., CA

Document Date: _____        Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: | Signer's Name: |
|---|---|
| 0 Individual | 0 Individual |
| 0 Corporate Officer—Title(s): | 0 Corporate Officer—Title(s): |
| 0 Partner — 0 Limited 0 General | 0 Partner — 0 Limited 0 General |
| 0 Attorney in Fact | 0 Attorney in Fact |
| 0 Trustee | 0 Trustee. |
| 0 Guardian or Conservator | 0 Guardian or Conservator |
| 0 Other: | 0 Other: |
| Signer is Representing· _____ | Signer is Representing: _____ |

Top of thumb here            Top of thumb here

TRUE
if;71CFC.70:11
—rot 4 4,4Pti

(Page 41 of 41)

State of California
County of

On                              before me,

                                                                    personally appeared

                                                          , personally known to me
(01 proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                        _____ (Seal)

EXHIBIT B



2017040695   02/14/2017 10:32 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:        34.00

4   PGS

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO**
Title365
AZTEC FORECLOSURE CORPORATION
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

_____
Space above this line for recorder's use only

APN # 097-0144-038
Property Address: 1547 Kingsport Avenue, Livermore, CA 94550
Trustee Sale No. 16-004721CXE   Title Order No. 730-1613557-70

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**The amount is $143,553.64 as of 02/10/17 and will increase until your account becomes current.**

1 – Notice of Default

T.S. #: 16-004721CXE
ORDER #: 730-1613557-70
Notice of Default - Aztec

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc Pass Through Certificates 2007-QH7 c/o Nationstar Mortgage LLC
> C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877) 257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Substituted Trustee, or acting as agent for the beneficiary or trustee under a Deed of Trust dated 06/08/07, executed by Dwayne C. Smith and Linda E. Smith, his wife, as joint tenants, as trustor(s), to secure obligations in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Homecomings Financial, LLC (f/k/a Homecomings

T.S. #:  16-004721CXE
ORDER #:  730-1613557-70
Notice of Default - Aztec

Financial Network, Inc.), A Delaware Limited Liability Company, as Beneficiary recorded on June 19, 2007 in Instrument No. 2007227875 and thereafter loan modification recorded on 02/23/2012 at recorder's no. 2012061316 of official records in the Office of the Recorder of ALAMEDA County, California, as more fully described on said Deed of Trust.

Including the Note(s) for the sum of $576,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE 08/01/12 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, TOGETHER WITH LATE CHARGES, IMPOUNDS, INSURANCE PREMIUMS AND/OR OTHER ADVANCES, TAXES, DELINQUENT PAYMENTS ON SENIOR LIENS, ASSESSMENTS, ATTORNEY'S FEES AND/OR TRUSTEE'S FEES, IF ANY, AND COURT RELATED COSTS ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY OTHER FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST, PROMISSORY NOTE, AND RELATED DOCUMENTS AND ALL OF WHICH MUST BE CURED AS A CONDITION OF REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5 or 2923.55 is attached to this notice.

DATE:  3/10/17

AZTEC FORECLOSURE CORPORATION
As Trustee or acting as Agent for the beneficiary

Karl Sheehan
Assistant Secretary / Assistant Vice President

(Page 1 of 1)

Copy

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s):        DWAYNE C SMITH & LINDA E SMITH
Mortgage Servicer:  Nationstar Mortgage
Property Address:   1547 KINGSPORT AVE LIVERMORE CA 94550
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1.  ☑ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2.  ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3.  ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

    ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

    ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries,

    ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4.  ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(e).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

                    Nationstar Mortgage LLC
                    Mortgage Servicer

Dated: 12/11/2013   By: _____ 12/11/2013
                    Name (Print): Tommy Glover

                    Assistant Secretary

EXHIBIT C



**Recording Requested By:**
*and*

WHEN RECORDED MAIL TO:
Title365
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012



2017116535   05/30/2017 10:01 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:   28.00

2   PGS

---

Trustee Sale No. 16-004721 CXE
730-1613557-70
APN 097-0144-038

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER:* THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/08/07.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

---

On **06/27/17** at **12:30 pm**, **Aztec Foreclosure Corporation** as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Dwayne C. Smith and Linda E. Smith, his wife, as joint tenants**, as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.), A Delaware Limited Liability Company, as Beneficiary,   Recorded on 08/18/07 in Instrument No. 2007227875 and thereafter loan modification recorded on 02/23/2012 at recorder's no. 2012061316 of official records in the Office of the county recorder of ALAMEDA County, California; WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), At the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
**1547 KINGSPORT AVENUE, LIVERMORE, CA 94550**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$825,539.44**   (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Page 1 – Notice of Sale

Notice of Trustee's Sale
T.S. #: 16-004721 CXE
ORDER #:   730-1613557-70

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: _5-25-17_

AZTEC FORECLOSURE CORPORATION

_Elaine Malone_ (signature)

Elaine Malone
Assistant Secretary / Assistant Vice President
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012
Phone: (877) 257-0717 or (602) 638-5700
Fax:  (602) 638-5748
www.aztectrustee.com

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 16-004721.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| www.homesearch.com<br>800-758-8052 | Or | Aztec Foreclosure Corporation<br>(877) 257-0717<br>www.aztectrustee.com |
|---|---|---|

Page 2 – Notice of Sale

EXHIBIT D

Date: 06/08/18

Property Address: 1547 KINGSPORT AVE, LIVERMORE, CA 94550

PROPOSED RELOCATION ASSISTANCE
RE: Foreclosure Sale of the Above-Referenced Property

A foreclosure sale of the above-referenced property has taken place. A request to begin eviction proceedings against all occupants in the property has already been forwarded to our attorney's office.

You may avoid an eviction judgement being rendered against you by entering into an agreement to turn over possession of the property. Nationstar Mortgage LLC, the new owner, may be willing to pay you to vacate the property on a mutually agreeable date. You must contact our real estate agent at the number below within seven (7) business days of the date of this letter if you are interested in pursuing such an agreement. This letter is not a binding offer.

An agreement must be executed and signed by all parties to be valid. Accordingly, if you are interested please call our real estate agent Allan McGurk at (408) 590-1598 (Tammera Hernandez), at (720)-387-2088. If you happen to reach the voicemail system please be sure to clearly leave your name, 10-digit phone number and the property address about which you are calling. All calls will be returned as soon as possible.

Please be advised that efforts to obtain possession of the property shall continue until you and all others vacate the property. Contact us should you have any questions.

Relocation Assistance

Nationstar Mortgage LLC