# EXHIBIT 2



21009916

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| DWAYNE AND LINDA SMITH<br>1547 Kingsport Avenue<br>Livermore, CA 94550<br><br>TELEPHONE NO.: (925) 998-5112   FAX NO.:<br>ATTORNEY FOR (Name): Plaintiffs Dwayne and Linda Smith in pro per | **FILED**<br>ALAMEDA COUNTY<br><br>AUG 13 2018<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 2233 Shoreline Drive
MAILING ADDRESS: Same
CITY AND ZIP CODE: Alameda 94501
BRANCH NAME:

CASE NAME:
Dwayne and Linda Smith v. Nationstar Morgage, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | RG18916422<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☑ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | **Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint (not specified above) (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition (not specified above) (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): Nine
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: August 13, 2018
Dwayne and Linda Smith, In Pro Per
_____
(TYPE OR PRINT NAME)        ▶ _____
                             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |





CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto*)
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or*
  *toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil*
  *harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer*
      *or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally*
  *complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent*
    *domain, landlord/tenant, or*
    *foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex*
  *case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-*
    *domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified*
  *above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-*
    *harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified*
  *above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition



21009914

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DWAYNE C. AND LINDA E. SMITH,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NATIONSTAR MORTGAGE, LLC, aka MR. COOPER; and DOES 1-5 inclusive,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
ALAMEDA COUNTY

AUG 13 2018

CLERK OF THE SUPERIOR COURT
By _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* George E. McDonald Hall of Justice
2233 Shoreline Drive
Alameda, California 94501

CASE NUMBER:
*(Número del Caso):*
RG18916422

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dwayne and Linda Smith, 1547 Kingsport Avenue, Livermore, California 94550; (925) 998-5112

Chad Finke

DATE: August 31 2018
*(Fecha)*
AUG 31 2018
Clerk, by _____, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

21010636

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: *925 998 5112*   FAX NO. *(Optional)*: E-MAIL ADDRESS *(Optional)*: ATTORNEY FOR *(Name)*: *Dwayne C and Linda Smith proper* | FILED ALAMEDA COUNTY AUG 1 6 2018 CLERK OF THE SUPERIOR COURT By *Sue Perko* Deputy |

SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY
STREET ADDRESS: *1225 Fallon Street*
MAILING ADDRESS:
CITY AND ZIP CODE: *Oakland, Ca 94612*
BRANCH NAME: *Rene Davidson Court*

PLAINTIFF/PETITIONER: *Dwayne C and Linda E Smith*

DEFENDANT/RESPONDENT: *Nationstar Mtg LLC*

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: *RG 18916422* |
|---|---|

**INSTRUCTIONS:** All applicable boxes must be checked, and the specified information must be provided.

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: *8-13-18* . An initial Case Management Conference is scheduled for:

   Date:                    Time:                    Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process *(check one)*:

   ☒ Court mediation       ☒ Judicial arbitration  *Am*
   ☒ Private mediation      ☒ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: *August 15, 2018*

*Dwayne C. Smith*                           ► *Dwayne C Smith*
_____               _____
(TYPE OR PRINT NAME)                       (SIGNATURE OF PLAINTIFF)

Date:

_____               ► _____
(TYPE OR PRINT NAME)                       (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

**BY FAX**

ALA ADR-001

| PLAINTIFF/PETITIONER: Dwayne C and Linda E Smith | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: NATIONSTAR MORTGAGE LLC | RG 189 16422 |

Date: August 15, 2018

Linda E Smith

_____

(TYPE OR PRINT NAME)

▶ _Linda E Smith_ (signature)

_____

(SIGNATURE OF DEFENDANT)

Date:

_____

(TYPE OR PRINT NAME)

▶ _____

(SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

*Superior Court of California, County of Alameda*



## Notice of Assignment of Judge for All Purposes

Case Number: RG18916422
Case Title:    Smith VS Nationstar Mortgage, LLC
Date of Filing: 08/13/2018

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| Judge: | Robert McGuiness |
| Department: | 22 |
| Address: | Administration Building |
| | 1221 Oak Street |
| | Oakland CA 94612 |
| Phone Number: | (510) 267-6938 |
| Fax Number: | (510) 267-1574 |
| Email Address: | Dept.22@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO<br>JUDGE Robert McGuiness<br>DEPARTMENT 22

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

(1) Counsel are expected to be familiar with the Statement of Professionalism and Civility, Alameda County Bar (www.acbanet.org, "About the ACBA," "Forms Library.") (2) Appearances by attorneys who are not counsel of record are not permitted except for good cause shown. Non-emergency scheduling conflicts is not good cause. (3) A courtesy copy of any paper filed, lodged or otherwise submitted in connection with any motion or application must be delivered to Department 22 at the above address by mail, overnight delivery, or to the courtesy copy box outside the courtroom promptly after filing or submission(see Local Rule 3.30(c)). (4) All references to "counsel" in this order apply equally to self-represented parties, who should know that there is a Self-Help Center at Hayward Hall of Justice, 24405 Amador Street, 1st Floor, Dept.501. (5) Email communication to the department is preferred, but email is NOT a substitute for filing of pleadings/documents.

Schedule for Department 22

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Contacts with Dept. 22 should be by e-mail with copies to all counsel after conferring about proposed dates.

- Trials generally are held: Mondays through Thursdays, 8:30 a.m. to 1:30 p.m. with two breaks and Fridays, 8:30 a.m. to noon with one break. A pretrial conference is generally scheduled 3 weeks before trial at 8:30 a.m. or 2:00 p.m. on a Friday. Personal appearance required.

- Case Management Conferences are held: Mondays through Thursdays at 3:00 p.m.

- Law and Motion matters are heard: Tuesdays and Thursdays at 3:00 p.m. (maximum 5 each). Email Dept. 22 to obtain a reservation. Limited hearings are available for summary judgments, preliminary injunctions and other time intensive motions.

- Settlement Conferences are heard:  Court resources are limited.  Counsel encouraged to consider alternative dispute resolution options.  Conferences will be specially set when deemed appropriate.

- Ex Parte matters are heard:  Applications are considered only on moving papers and any written response.  Email Dept. 22 to advise when papers will be filed and give notice to other side and advise same that written opposition must be filed in 24 hours.

Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
    Email:      Dept.22@alameda.courts.ca.gov


- Ex Parte Matters
    Email:      Dept.22@alameda.courts.ca.gov


Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 22

- Phone:  1-866-223-2244


Dated:  08/15/2018

_____
                            Presiding Judge,
          Superior Court of California, County of Alameda

_____
**CLERK'S CERTIFICATE OF MAILING**
I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing

and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 08/16/2018

By _____

Deputy Clerk

RECORDING REQUESTED
BY, AND WHEN
RECORDED RETURN TO:

Linda E Smith and
Dwayne C Smith
1547 Kingsport Avenue
Livermore, CA 94550



2018162690      08/20/2018 02:15 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:      116.00

10   PGS

THIS SPACE FOR RECORDER'S USE ONLY

Notice of Pendency of Action
TITLE OF DOCUMENT

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(GOVT. CODE 27361.6)
(ADDITIONAL RECORDING FEE APPLIES)

Dwayne C. Smith                                    Nationstar Mortgage, LLC
1547 Kingsport Avenue
Livermore, CA  94550____

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Smith<br><br>                                   Plaintiff/Petitioner(s)<br><br>            vs.<br><br><br>Nationstar Mortgage, LLC<br>                              Defendant/Respondent(s)<br>                    (Abbreviated Title) | No. <u>RG18916422</u><br><br>Request Re: Other Ex Parte Granted |

Plaintiffs' Ex Parte Motion for Leave to Record Lis Pendens, filed by Plaintiffs Dwayne C. Smith and Linda E. Smith ("Plaintiffs") on August 16, 2018, is GRANTED.

The application includes proof of ex parte notice to Defendant Nationstar Mortgage LLC dba Mr. Cooper, and the court has not received any opposition. The court finds a sufficient showing for this interim ex parte relief until the matter may be considered on the merits on a noticed motion at a later time. (See C.C.P. § 405.21; CRC 3.1202(c).)

IT IS ORDERED that Plaintiffs have leave to record a Notice of Pendency of Action in the form of that submitted as Exhibit C to the ex parte application, pertaining to the real property at 1547 Kingsport Ave., Livermore, CA 94550, APN 97-144-38.

Dated:  08/20/2018                              _____ – facsimile
                                                Judge Robert McGuiness

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Smith VS Nationstar Mortgage, LLC | RG18916422 |

ADDITIONAL ADDRESSEES

Linda E. Smith
1547 Kingsport Avenue
Livermore, CA   94550____



21012964

<table>
<tr><td>1</td><td>DWAYNE C AND LINDA E SMITH<br>1547 Kingsport Ave, Livermore, CA 94550, USA</td></tr>
</table>

1  DWAYNE C AND LINDA E SMITH
    1547 Kingsport Ave, Livermore, CA 94550, USA
2  (925) 998-5112
    lsmith5648@aol.com
3
    IN PRO PER
4  DWAYNE C AND LINDA E SMITH

**FILED**
**ALAMEDA COUNTY**

AUG 2 0 2018

CLERK OF THE SUPERIOR COURT
By _____
                  Deputy

5

6

7      **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8             **COUNTY OF ALAMEDA**

9  DWAYNE C. and LINDA E. SMITH,    Case No: R G 18916422

10           Plaintiffs,    **NOTICE OF PENDENCY OF ACTION**
11                     **(CCP Section 405, *et seq.*)**

12  vs.                  **Complaint Filed:**

13

14  NATIONSTAR MORTGAGE, LLC, AKA
    MR. COOPER; AND DOES 1-5
15  INCLUSIVE,

16           Defendants.

17

18

19      Notice is hereby given that the above-entitled action is pending in the above-entitled

20  court. The Plaintiff(s) in this action are DWAYNE C AND LINDA E SMITH. The Defendants

21

22  are NATIONSTAR MORTGAGE LLC AKA MR. COOPER (hereinafter, collectively referred

23  to as "Defendants").

24      This action affects title to specific real property identified in the operative complaint

25  ("Complaint"). The Complaint was filed on *August 13, 2018* to redress injuries

26  suffered by Plaintiff(s) as a result of Defendants' conduct. Defendants have unlawfully

27

28                     1

                  **NOTICE OF PENDENCY OF ACTION**

attempted to take title to Plaintiffs' real property, and are attempting to deprive Plaintiff(s) of

Plaintiffs' rightful title to the real property.

The specific real property affected by this action and referred to herein is situated in the

State of California, County of Alameda, and described as follows:

Assessor's Parcel Number: 97-144-38

Address: 1547 Kingsport Ave, Livermore, CA 94550, USA

Please see the legal description attached hereto as Exhibit "A", which is incorporated

herein by this reference.

DATE: 8/20/18                    By: _____

DWAYNE C. SMITH, Pro Per Plaintiff

DATE: 8/20/18                    By: _____

LINDA E. SMITH, Pro Per Plaintiff

2

NOTICE OF PENDENCY OF ACTION

# EXHIBIT A

1

<u>SERVICE LIST</u>

2

<u>CSC - Lawyers Incorporating Service</u>

3

2710 Gateway Oaks Drive, #150N

4

Sacramento, CA 95833

5

Facsimile:  *302 - 636 - 5454*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
PROOF OF SERVICE

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ALAMEDA

I am over the age of 18.  My home address is 1547 Kingsport Ave, Livermore, CA 94550.        On August 20, 2018, I served the foregoing documents described as **NOTICE OF PENDENCY OF ACTION (CCP Section 405, *et seq.*)** on all interested parties as stated below:

SEE ATTACHED SERVICE LIST.

☒ **BY CERTIFIED MAIL** – I deposited such envelope in the mail at Alameda, California. The envelope was mailed via certified mail return receipt requested with postage thereon fully prepaid.

☐ **BY PERSONAL SERVICE** – I caused such envelope to be delivered.

☐ **BY FACSIMILE** – I faxed said document to the office(s) of the addressee(s) shown above, and the transmission was reported as complete and without error.

☐ **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the email address(es) indicated.

☐ **BY OVERNIGHT DELIVERY** – I deposited such envelope for collection and delivery with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery.  They are deposited with a facility regularly maintained for receipt on the same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 20, 2018  at Alameda, California.

DWAYNE SMITH

3

NOTICE OF PENDENCY OF ACTION

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA
The foregoing instrument is a true and correct
copy of the original on file in this office

ATTEST     AUG 20 2018

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

21010637

*It is highly likely that an opposition will be filed this complaint was only filed, and serve 8-13-18. Accordingly an attorney has not yet been assigned. When we contacted the defendants + defendant's agent to process to provide notice they did not confirm whether an opposition but would be filed. thank You.*

DWAYNE C. AND LINDA E. SMITH
547 Kingsport Avenue
Livermore, California, 94550
Telephone: (925) 998-5112
Email: lsmith5648@aol.com

DWAYNE C. SMITH and LINDA E. SMITH,
Pro Per Plaintiffs

FILED
ALAMEDA COUNTY

AUG 1 6 2018

CLERK OF THE SUPERIOR COURT
By _Sue Pease_
Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

DWAYNE C. AND LINDA E. SMITH,

        Plaintiffs,

vs.

NATIONSTAR MORTGAGE, LLC aka MR.
COOPER; and DOES   1-5 inclusive,

        Defendants.

Case No. R G 18916422

**PLAINTIFFS' *EX PARTE* MOTION FOR
LEAVE TO RECORD LIS PENDENS;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF;
AND DECLARTION OF DWAYNE C. AND
LINDA E. SMITH IN SUPPORT THEREOF;
[PROPOSED] ORDER**

DATE: August 15, 2018
TIME:
DEPT: 22

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

    Plaintiffs respectfully apply for an order of this Court for leave to record a Notice of

Pendency of Action with the Alameda County Recorder.

    This Application is made on an *ex parte* basis as Plaintiffs will be irreparably damaged if the

Court does not allow Plaintiffs to record a Notice of Pendency of Action prior to the close of escrow

scheduled for August 22, 2018, in order to provide any prospective purchaser at the trustee sale or

- 1 -
EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

thereafter with notice that the Subject Property located at: 1547 Kingsport Avenue, Livermore, CA 94550 and

is the subject of a lawsuit filed by Plaintiffs on *August 13, 2018*.

This Motion is based upon the following grounds:

1. It is made for good cause in that it involves rights to unique property, namely ownership of the Subject Property as described herein above;

2. Plaintiff has a meritorious Verified Complaint ("Complaint") against Defendants for multiple causes of action, including but not limited to: (1) Violation of *California Civil Code* § 2923.5;  (2) Violation of *California Civil Code* § 2923.17; (3) Violation of *California Civil Code* §§ 2924f and 2924b; (4) Breach of Contract; (5) Breach of Good Faith and Fair Dealing; (6) Fraudulent Misrepresentation; (7) Violation of *California Business and Professions Code* Section 17200 *et seq.*; (8) Wrongful Foreclosure, to Set Aside Trustee Sale and Injunctive Relief; and (9) For Quiet Title

3. Plaintiffs are more likely than not to prevail on the merits of the Complaint, as among numerous other violations, the 2017 Notice of Default was recorded pursuant to a fraudulent and invalid 2013 Declaration, and Plaintiffs NEVER received any notice of the trustee sale until after the sale had already taken place; and,

4. The Subject Property is at issue given the filed Complaint, and Plaintiffs will suffer great and irreparable injury if Plaintiffs are unable to record the lis pendens prior to the close of escrow thereby clouding title and preventing escrow from closing. This is further strengthened by the fact that the alleged "purchaser" has been apprised of Defendants' wrongful foreclosure of the Subject Property and that a civil action has been prepared.  If Mr. Singh chooses to proceed with the sale and not cancel escrow,

he is doing so knowing of Plaintiffs' claim thereby negating any third party bona fide purchaser status or protection.

This Motion is made *ex parte* because of exigent circumstances in that the Defendants have unlawfully foreclosed upon the Subject Property and are now attempting to transfer to Mr. Singh and escrow is scheduled to close on August 22, 2018. Plaintiffs have no other remedy at law or in equity but to record this Lis Pendens on the Subject Property in order to avoid any further sale or transfer of the Subject Property until resolution of the Civil Action.

This Motion is based upon all pleadings, records, and papers on file in this action, the Memorandum of Points and Authorities, the Declaration of Dwayne C. and Linda E. Smith in support thereof and such further evidence and argument as may be heard at the hearing on this Motion.

DATED:

August 15, 2018

By: _____
DWAYNE C. SMITH, Pro Per Plaintiff

DATED:

August 15, 2018

By: _____
LINDA E. SMITH, Pro Per Plaintiff

- 3 -
EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. STATEMENT OF CASE

Real Property: At all times material to this Complaint, Plaintiffs were the lawful owners of certain residential real property located at 1547 Kingsport Avenue, Livermore, CA 94550 (hereinafter referred to as the "Subject Property").

Primary Residence: The Subject Property is, and at all times material to this Complaint was, Plaintiffs' primary residence and owner-occupied.

Deed of Trust Recitals - Written Agreement: On or about June 8, 2007, Plaintiffs entered into a Deed of Trust (hereinafter "DOT" or "Subject Loan") with lender in the total sum of $576,000. The DOT named Homecomings Financial, LLC as the Lender; Mortgage Electronic Registration Systems ("MERS") as the Beneficiary; Landamerica Southland Title as the Trustee; and, Plaintiffs as the Borrowers. A true and correct copy of this DOT is attached to the Verified Complaint as *Exhibit A* and incorporated herein by this reference. Subsequently, Plaintiffs made regular monthly installment payments pursuant to the aforementioned financing agreement.

Assignment/Transfer: At some point after entering into the Deed of Trust, it appears that the beneficial interest or servicing was transferred first to U.S. Bank and then to Defendant NATIONSTAR.

Financial Hardship: On or about 4 years ago Plaintiff stopped making payments on the Subject Loan due to the following hardship(s): Plaintiffs are both in the building industry (Realtop and Flooring). In 2008 as a result of the economy, their businesses ceased making a profit. Plaintiffs went from a 6-figure income to less than $20,000 a year for 2 years. Plaintiffs had enough money saved to pay the mortgage for 2 years but after 2009 with such little income it became very difficult.

EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

1   Plaintiffs' businesses started improving but never recovered completely.  Plaintiffs were focusing all

2   the resources possible to pay their mortgage.

3          Mr. Balmacoon Was Referred by US Bank:  It appears that at some point after entering into

4
    the Subject Loan, U.S. Bank was assigned the Subject Loan.  In or about 2013, U.S Bank sent
5
    Plaintiffs a letter advising them of a company that could help Plaintiffs through their financial
6
7   difficulty. Plaintiffs contacted that company and were advised that the company could help them

8   secure a modification for the cost of approximately One Thousand Four Hundred Dollars ($1400.00)

9   per month. Plaintiffs received a call from Mr. Balmacoon from New York City who was given

10  Plaintiffs' information from the aforementioned company referred by U.S. Bank.  Plaintiffs began

11  working with Mr. Balmacoon toward the end of 2013 and paid a $1,000 start-up fee. Mr. Balmacoon

12
    advised Plaintiffs to no longer contact U.S. Bank as it would be too confusing with both Mr.
13
14  Balmacoon and Plaintiffs communicating with U.S. Bank. Plaintiffs followed his advice.  In 2015,

15  Plaintiffs buried eight (8) loved ones, which cost them emotionally and financially. Plaintiffs were

16  forced to rely on Mr. Balmacoon however it appears that every time Plaintiffs were close to being

17  approved for a modification, an occurrence would prevent such approval. Plaintiffs were also told

18
    they could not make payments during this time unless Plaintiffs paid the default in full. In 2017, Mr.
19
20  Balmacoon suggested Plaintiffs place the Subject Property in a Trust and attorneys would manage the

21  trust. This trust would cost One Thousand Two Hundred Dollars ($1200.00) to form and Three

22  Hundred Dollars ($300.00) a month to manage, thereby increasing Plaintiffs' monthly payments to

23  Eight Hundred Dollars ($800.00). Plaintiffs followed direction, yet no trust exists to this day.

24
    Plaintiffs were advised it would be best to add their son to title, which Plaintiffs did.  Unbeknownst to
25
26  Plaintiffs, Mr. Balmacoon filed a Bankruptcy Petition in New York to prevent the Subject Property

27

28

from proceeding to foreclosure sale. Plaintiffs began getting notices in the mail informing them of this occurrence.

Modification Attempts:  During this time, i.e. from 2013 to present day, Plaintiffs continuously submitted complete loan modification applications.

Notice of Default:  On or about February 10, 2017, Kari Sheehan as authorized representative for Aztec Foreclosure Corporation, executed a fraudulent Notice of Default based upon a 2923.55 declaration executed on **December 10, 2013 – nearly 3 ½ years earlier**!  This unlawful Notice of Default was recorded on February 14, 2017.  A true and correct copy of this NOD is attached to the Verified Complaint as *Exhibit B* and incorporated herein by this reference.

2017 Notice of Trustee Sale:  On May 27, 2017 Elaine Malone as assistant vice-president to Aztec Foreclosure, Defendants' authorized agent, executed a fraudulent Notice of Trustee Sale, which was recorded on May 30, 2017.  This notice is fraudulent as following a facially defective and invalid Notice of Default. A true and correct copy of this May 30, 2017 NOTS is attached to the Verified Complaint as *Exhibit C* and incorporated by this reference. Never Received Notice of Upcoming Sale Despite Receiving the NOD in 2017:  U.S. Bank and Defendant NATIONSTAR always sent foreclosure notice(s) via certified mail (as required), along with several copies via regular mail. Oddly in May 2018, Plaintiffs never received any notice regarding the upcoming trustee sale, which took place on or about June 5, 2018.

Notice that Sale Had Occurred, Received After the Fact:  On or about June 4, 2018, Plaintiffs and/or their agent spoke with an authorized agent at Defendant NATIONSTAR who advised that a sale was not scheduled to proceed. When Plaintiffs returned home after a short missionary trip on June 11, 2018, there was a notice posted on their door from the Defendant, stating that their home had

1   been sold. A true and correct copy of this notice is attached to the Verified Complaint as ***Exhibit D***

2   and incorporated herein by this reference.

3       Unlawful Trustee Sale Took Place and now in Escrow: An unlawful trustee sale occurred on

4   June 5, 2018, and Defendant NATIONSTAR "purchased" the Subject Property via a credit bid.

5   Defendants are now attempting to quickly transfer the Subject Property to a third party in an effort to

6   deprive Plaintiffs' of the Subject Property.  Specifically, Defendants have transferred the Subject

7   Property to Paul Singh who is scheduled to close escrow on or about August 22, 2018.  Please be

8   advised that to date, Plaintiffs have not been provided with a Trustee's Deed Upon Sale.

9       Plaintiffs NEVER Provided with Required Notice of Sale: At no point prior to the unlawful

10   trustee sale occurring, were Plaintiffs provided with the required notice of sale in the manner

11   prescribed by Section 2924f and Section 2924b.

12       No Bona Fide Third-Party Purchaser: Despite the fact that the trustee sale took place,

13   Plaintiffs allege there was never any sale of the Subject Property to a bona fide third-party purchaser

14   because Defendant was the foreclosing beneficiary. Despite the fact that Defendants have attempted

15   to transfer the Subject Property to Paul Singh.  In or about the end of July or beginning of August,

16   Mr. Singh approached Plaintiffs at the Subject Property and claimed to be the "new owner".

17   Plaintiffs corrected Mr. Singh advising that a sale had not been completed as of yet.  Mr. Singh said

18   that escrow was scheduled to close shortly.  In response Plaintiffs advised Mr. Singh of the wrongful

19   conduct of Defendant NATIONSTAR and that Plaintiffs were in the process of filing suit thereby

20   placing the Subject Property at the center of litigation.  In the event Mr. Singh chooses to close

21   escrow he cannot be deemed a third party purchaser as he is choosing to proceed with the acquisition

22   of the Subject Property despite being aware that it is the subject of litigation.  Immediately upon

23   being made aware of the litigation, Mr. Singh should have cancelled escrow.  Rather, he chose not to

- 7 -
EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

and has since assumed the risk associated with such a consummation of sale of a property that is the subject of a lawsuit.

   Defendant Fraudulently Misrepresented and Promised That Sale Would not Take Place: Prior to the June 5, 2018 sale of their home, Plaintiffs were explicitly advised that a trustee sale was not scheduled to proceed.  Specifically on or about June 4, 2018, when Plaintiffs and/or their agent contacted Defendant NATIONSTAR to determine if a sale was scheduled, they were advised that a sale would not proceed.  Plaintiffs were not properly notified of sale until after it had occurred.  During Plaintiff's conversation(s) with Defendant's authorized representative, he failed to advise Plaintiffs that a trustee sale was going to take place and instead promised Plaintiffs that a trustee sale would not take place while Plaintiffs' loan modification application was being reviewed.

   In response to this unlawful conduct, on or about August 13, 2018, Plaintiffs filed a Verified Complaint for the following causes of action: (1) Violation of *California Civil Code* § 2923.55 or 2923.5; (2) Violation of *California Civil Code* § 2924.17; (3) Violation of *California Civil Code* § 2924f and 2924b; (4) Breach of Contract; (5) Breach of Good Faith and Fair Dealing (6) Intentional Misrepresentation; and (7) Violation of *California Business and Professions Code* Section 17200 *et seq*.; (8) Wrongful Foreclosure; and, (9) Quiet Title. A true and correct copy of the conformed Verified Complaint is attached to the Declaration of Linda Smith as Exhibit B and incorporated herein by this reference.

## B. LEGAL ARGUMENT

### 1. Ex Parte Requirements are Satisfied

   "An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." *CRC* §3.1202.

1   In Plaintiffs' Declaration, Plaintiffs advise that the Subject Property is scheduled to close

2   escrow on or about August 22, 2018, and that as such, Plaintiffs are subject to irreparable harm if

3   Plaintiffs are not able to record a Lis Pendens in order assert their claim and prevent escrow from

4   closing.

5

6

7       **2.   Authority to Record Lis Pendens**

8       "A lis pendens is a recorded document giving constructive notice that an action has been

9   filed affecting title or right to possession of the real property described in the notice." *Kirkeby v.*

10  *Superior Court*, 33 Cal. 4th 642, 647 (2004). "A lis pendens clouds title until the litigation is

11  resolved or the lis pendens is expunged, and any party acquiring an interest in the property after

12  the action is filed will be bound by the judgment." *Slintak v. Buckeye Retirement Co., L.L.C.,*

13  *Ltd.*, 139 Cal.App.4th 575, 586-87 (2006).

14      A lis pendens "shall not be recorded unless (a) it has been signed by the attorney of record, (b)

15  it is signed by a party acting in Pro Pria Persona and approved by a judge as provided in this section,

16

17  or (c) the action is subject to Section 405.6." *Cal. Code Civ. P.* § 405.21.

18      **3.   Plaintiff's Verified Complaint Contains Real Property Claims**

19      Under *Cal. Code Civ. P.* §405.20, a "lis pendens may be filed by any party in an action who

20  asserts a "real property claim." *Kirkeby*, 33 Cal.4th at 647.  A " real property claim" is defined by

21  statute in relevant part as "the cause or causes of action in a pleading which would, if meritorious,

22

23  affect (a) title to, or the right to possession of, specific real property . . . ." *Cal. Code Civ. P.* § 405.4;

24  *Kirkeby*, 33 Cal.4th at 647.

25      Plaintiff's entire Complaint is based upon real property claims affecting title and right to

26  possession of the Subject Property.  Specifically, Plaintiff has filed the following causes of action: (1)

27

28

- 9 -
EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

Violation of *California Civil Code* § 2923.55 or 2923.5;  (2) Violation of *California Civil Code* § 2924.17; (3) Violation of *California Civil Code* § 2924f and 2924b; (4) Breach of Contract; (5) Breach of Good Faith and Fair Dealing (6) Intentional Misrepresentation; and (7) Violation of *California Business and Professions Code* Section 17200 *et seq*.; (8) Wrongful Foreclosure; and, (9) Quiet Title.

In their Complaint Plaintiffs allege among other things that the NOD is facially fraudulent and invalid for failing to comply with Paragraph 22 of the Deed of Trust and for being executed and recorded pursuant to an invalid declaration executed in 2013 nearly four years prior to the execution of the NOD.  Additionally, Plaintiffs were not provided with Notice of the Trustee Sale prior to the June 5, 2018 sale.  Although Plaintiffs were provided with a Notice of Sale in 2017, at no point were they provided with an updated notice of sale at least 20 days prior to the June 5, 2018 sale.  Rather, Plaintiffs only received notice that the Subject Property had sold when they came home on June 11, 2018 from a missionary trip only to find a notice from Defendant NATIONSTAR and one from Aztec that a trustee sale had taken place (Please see Exhibit D to the Verified Complaint).  Plaintiffs had contacted Defendants prior to the sale to determine whether a trustee sale was scheduled, however Defendants affirmatively advised Plaintiffs and/or their agents that no sale was scheduled.  Up until June 4, 2018, Defendants advised Plaintiffs and/or their agents that a trustee sale had not been scheduled, when, in fact, a trustee sale was scheduled to proceed the following day.

Defendants never validly acquired title to the Subject Property. Despite the fact that the trustee sale took place, Plaintiffs allege there was never any sale of the Subject Property to a bona fide third-party purchaser because Defendant was the foreclosing beneficiary. This remains true despite the fact that Defendants have attempted to transfer the Subject Property to Paul Singh.  In or about the end of July or beginning of August 2018, Mr. Singh approached Plaintiffs at the Subject

1   Property and claimed to be the "new owner".  Plaintiffs corrected Mr. Singh advising that a sale had

2   not been completed as of yet.  Mr. Singh said that escrow was scheduled to close shortly.  In response

3   Plaintiffs advised Mr. Singh of the wrongful conduct of Defendant NATIONSTAR and that Plaintiffs

4   were in the process of filing suit thereby placing the Subject Property at the center of litigation.  In

5   the event Mr. Singh chooses to close escrow he cannot be deemed a third party purchaser as he is

6   choosing to proceed with the acquisition of the Subject Property despite being aware that it is the

7   subject of litigation.  Immediately upon being made aware of the litigation, Mr. Singh should have

8   cancelled escrow.  Rather, he chose not to and has since assumed the risk associated with such a

9   consummation of sale of a property that is the subject of a lawsuit.

10  C.  **CONCLUSION.**

11      Based upon the foregoing, Plaintiff respectfully requests that this Court allow Plaintiff to

12  record a Notice of Pendency of Action against the Subject Property with the Alameda County

13  Recorder.

14  DATE:

15  _August 15, 2018_                         By: _____

16                                            DWAYNE C. SMITH, Pro Per Plaintiff

17  DATE:

18  _August 15, 2018_                         By: _____

19                                            LINDA E. SMITH, Pro Per Plaintiff

- 11 -

EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

**DECLARATION OF LINDA E. SMITH IN SUPPORT OF PLAINTIFFS' EX PARTE**
**MOTION FOR LEAVE TO RECORD NOTICE OF PENDENCY OF ACTION**

I, LINDA E. SMITH, declare as follows:

1. I am over the age of 18 years, and one of the Plaintiffs in the above-referenced action. The following facts are within my personal knowledge except for those facts, which are alleged on information and belief.

2. **NOTICE RE EX PARTE HEARINGS:** On August 15, 2018 at 11:23 A.M./P.M., I contacted the office of Defendant at the following number: 1-866-316-2432. I spoke with DEE and advised that I was giving *ex parte* notice as follows: On courthouse does not of filing schedule hearings and will advise of results. JUDGE A.M./P.M. in Department 22 of the California Superior Court- George E. McGuiness, Dept. 22, Admin. Bldg., 4th FLOOR, 1221 Oak St. Oakland McDonald Hall of Justice 2233 Shoreline Drive, Alameda, California 94501 that I would be California 94612 moving the Court *ex parte* as follows: PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO RECORD NOTICE OF PENDENCY ACTION.

3. **Faxed Copies of Motions:** On August 15, 2018, at approximately 13:21 A.M./P.M. I faxed copies of my Ex Parte Motion for Leave to Record Notice of Pendency of Action to Defendant at Nationstar Mtg LLC Facsimile: CSC- 302-636-5454 and Facsimile USA 972-459-1611 True and correct copies of those fax confirmations are attached hereto as *Exhibit A* and incorporated herein by this reference.

4. **Real Property:** At all times material to this Complaint, my husband and I were the lawful owners of certain residential real property located at 1547 Kingsport Avenue, Livermore, CA 94550 (hereinafter referred to as the "Subject Property").

EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

5. <u>Primary Residence</u>: The Subject Property is, and at all times material to this Complaint was, my husband's and my primary residence and owner-occupied.

6. <u>Deed of Trust Recitals - Written Agreement</u>: On or about June 8, 2007, my husband and I entered into a Deed of Trust (hereinafter "DOT" or "Subject Loan") with lender in the total sum of $576,000. The DOT named Homecomings Financial, LLC as the Lender; Mortgage Electronic Registration Systems ("MERS") as the Beneficiary; Landamerica Southland Title as the Trustee; and, my husband and I as the Borrowers. A true and correct copy of this DOT is attached to the Verified Complaint as *Exhibit A* and incorporated herein by this reference. Subsequently, My husband and I made regular monthly installment payments pursuant to the aforementioned financing agreement.

7. <u>Assignment/Transfer</u>:  At some point after entering into the Deed of Trust, it appears that the beneficial interest or servicing was transferred first to U.S. Bank and then to Defendant NATIONSTAR.

8. <u>Financial Hardship</u>: On or about 4 years ago my husband and I stopped making payments on the Subject Loan due to the following hardship(s): My husband and I are both in the building industry (Realtop and Flooring). In 2008 as a result of the economy, their businesses ceased making a profit.  My husband and I went from a 6-figure income to less than $20,000 a year for 2 years.  My husband and I had enough money saved to pay the mortgage for 2 years but after 2009 with such little income it became very difficult. Our businesses started improving but never recovered completely.  My husband and I were focusing all the resources possible to pay our mortgage.

9. <u>Mr. Balmacoon Was Referred by US Bank</u>:  It appears that at some point after entering into the Subject Loan, U.S. Bank was assigned the Subject Loan.  In or about 2013; U.S Bank sent

My husband and I a letter advising us of a company that could help us through our financial difficulty. My husband and I contacted that company and were advised that the company could help us secure a modification for the cost of approximately One Thousand Four Hundred Dollars ($1400.00) per month. My husband and I received a call from Mr. Balmacoon from New York City who was given our information from the aforementioned company referred by U.S. Bank. We began working with Mr. Balmacoon toward the end of 2013 and paid a $1,000 start-up fee. Mr. Balmacoon advised us to no longer contact U.S. Bank as it would be too confusing with both Mr. Balmacoon and us communicating with U.S. Bank. We followed his advice. In 2015, we buried eight (8) loved ones, which cost us emotionally and financially. We were forced to rely on Mr. Balmacoon however it appears that every time we were close to being approved for a modification, an occurrence would prevent such approval. We were also told we could not make payments during this time unless we paid the default in full. In 2017, Mr. Balmacoon suggested we place the Subject Property in a Trust and attorneys would manage the trust. This trust would cost One Thousand Two Hundred Dollars ($1200.00) to form and Three Hundred Dollars ($300.00) a month to manage, thereby increasing our monthly payments to Eight Hundred Dollars ($800.00). WE followed direction, yet no trust exists to this day. We were advised it would be best to add their son to title, which we did. Unbeknownst to us, Mr. Balmacoon filed a Bankruptcy Petition in New York to prevent the Subject Property from proceeding to foreclosure sale. We began getting notices in the mail informing them of this occurrence.

10. <u>Modification Attempts</u>: During this time, i.e. from 2013 to present day, we continuously submitted complete loan modification applications.

11. <u>Notice of Default</u>: On or about February 10, 2017, Kari Sheehan as authorized representative

for Aztec Foreclosure Corporation, executed a fraudulent Notice of Default based upon a 2923.55 declaration executed on **December 10, 2013 – nearly 3 ½ years earlier**!  This unlawful Notice of Default was recorded on February 14, 2017.  A true and correct copy of this NOD is attached to the Verified Complaint as *Exhibit B* and incorporated herein by this reference.

12. <u>2017 Notice of Trustee Sale</u>:  On May 27, 2017 Elaine Malone as assistant vice-president to Aztec Foreclosure, Defendants' authorized agent, executed a fraudulent Notice of Trustee Sale, which was recorded on May 30, 2017.  This notice is fraudulent as following a facially defective and invalid Notice of Default.  A true and correct copy of this May 30, 2017 NOTS is attached to the Verified Complaint as *Exhibit C* and incorporated by this reference. <u>Never Received Notice of Upcoming Sale Despite Receiving the NOD in 2017</u>:  U.S. Bank and Defendant NATIONSTAR always sent foreclosure notice(s) via certified mail (as required), along with several copies via regular mail.  Oddly in May 2018, we never received any notice regarding the upcoming trustee sale, which took place on or about June 5, 2018.

13. <u>Notice that Sale Had Occurred, Received After the Fact</u>:  On or about June 4, 2018, our agent spoke with an authorized agent at Defendant NATIONSTAR who advised that a sale was not scheduled to proceed. When we returned home after a short missionary trip on June 11, 2018, there was a notice posted on their door from the Defendant, stating that their home had been sold. A true and correct copy of this notice is attached to the Verified Complaint as *Exhibit D* and incorporated herein by this reference.

14. <u>Unlawful Trustee Sale Took Place and now in Escrow</u>:  An unlawful trustee sale occurred on June 5, 2018, and Defendant NATIONSTAR "purchased" the Subject Property via a credit bid.  Defendants are now attempting to quickly transfer the Subject Property to a third party in

an effort to deprive us of the Subject Property.  Specifically, Defendants have transferred the

Subject Property to Paul Singh who is scheduled to close escrow on or about August 22,

2018.  Please be advised that to date, we have not been provided with a Trustee's Deed Upon

Sale.

15. Plaintiffs NEVER Provided with Required Notice of Sale: At no point prior to the unlawful

trustee sale occurring, were we provided with the required notice of sale in the manner

prescribed by Section 2924f and Section 2924b.

16. No Bona Fide Third-Party Purchaser: Despite the fact that the trustee sale took place, we

allege there was never any sale of the Subject Property to a bona fide third-party purchaser

because Defendant was the foreclosing beneficiary. Despite the fact that Defendants have

attempted to transfer the Subject Property to Paul Singh.  In or about the end of July or

beginning of August, Mr. Singh approached us at the Subject Property and claimed to be the

"new owner".  We corrected Mr. Singh advising that a sale had not been completed as of yet.

Mr. Singh said that escrow was scheduled to close shortly.  In response we advised Mr. Singh

of the wrongful conduct of Defendant NATIONSTAR and that we were in the process of

filing suit thereby placing the Subject Property at the center of litigation.  In the event Mr.

Singh chooses to close escrow he cannot be deemed a third party purchaser as he is choosing

to proceed with the acquisition of the Subject Property despite being aware that it is the

subject of litigation.  Immediately upon being made aware of the litigation, Mr. Singh could

have cancelled escrow.  Rather, he chose not to and has since assumed the risk associated

with such a consummation of sale of a property that is the subject of a lawsuit.

17. Defendant Fraudulently Misrepresented and Promised That Sale Would not Take Place: Prior

to the June 5, 2018 sale of our home, we were explicitly advised that a trustee sale was not

- 16 -
EX PARTE MOTION FOR LEAVE TO RECORD LIS PENDENS

scheduled to proceed.  Specifically on or about June 4, 2018, when our agent contacted

Defendant NATIONSTAR to determine if a sale was scheduled, we were advised that a sale

would not proceed.  We were not properly notified of the sale until after it had occurred.

During our agents conversation(s) with Defendant's authorized representative, Defendants

failed to advise our agent  that a trustee sale was going to take place and instead promised us

that a trustee sale would not take place while our loan modification application was being

reviewed.

18. In response to this unlawful conduct, on or about August 13, 2018, we filed a Verified

Complaint for the following causes of action: (1) Violation of *California Civil Code* §

2923.55 or 2923.5;  (2) Violation of *California Civil Code* § 2924.17; (3) Violation of

*California Civil Code* § 2924f and 2924b; (4) Breach of Contract; (5) Breach of Good Faith

and Fair Dealing (6) Intentional Misrepresentation; and (7) Violation of *California Business

and Professions Code* Section 17200 *et seq.*; (8) Wrongful Foreclosure; and, (9) Quiet Title.

A true and correct copy of this conformed Verified Complaint is attached hereto as ***Exhibit B***

and incorporated herein by this reference.

19. <u>Tender</u>: We believe that if necessary, we would be willing and able to tender an amount

deemed necessary by this Court in order to proceed with our claims against the Defendant.

20. <u>Proposed Notice of Pendency of Action</u>:  A copy of the Notice of Pendency of Action I would

like to record is attached hereto as ***Exhibit C*** and incorporated herein by this reference.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true

and correct.    Executed this  *15th*  day of August 2018 in Alameda County, State of California.

By: _____

LINDA E. SMITH, Pro Per Plaintiff

# EXHIBIT A

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 08/15/2018 13:30
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROJ0J200106
```

```
    DATE,TIME              08/15  13:23
    FAX NO./NAME           19724591611
    DURATION               00:06:58
    PAGE(S)                26
    RESULT                 OK
    MODE                   STANDARD
                           ECM
```

*It is highly unlikely that an opposition will be filed, as this complaint was only filed, and served on 8-13-18, accordingly an attorney has not yet been assigned. When we contacted the defendants + defendants agent to process to provide notice they did not confirm whether an opposition will would be filed. thank you.*

1  DWAYNE C. AND LINDA E. SMITH
   547 Kingsport Avenue
2  Livermore, California, 94550
   Telephone: (925) 998-5112
3  Email: lsmith5648@aol.com

4  DWAYNE C. SMITH and LINDA E. SMITH,
   Pro Per Plaintiffs

5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **IN AND FOR THE COUNTY OF ALAMEDA**

10 DWAYNE C. AND LINDA E. SMITH,          Case No. *R G 18916422*

11         Plaintiffs,

12 vs.                                    **PLAINTIFFS' *EX PARTE* MOTION FOR**
                                          **LEAVE TO RECORD LIS PENDENS;**
13                                        **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT THEREOF;**
14                                        **AND DECLARTION OF DWAYNE C. AND**
                                          **LINDA E. SMITH IN SUPPORT THEREOF;**
15 NATIONSTAR MORTGAGE, LLC aka MR.       **[PROPOSED] ORDER**
   COOPER; and DOES  1-5 inclusive,
16
           Defendants.
17                                        DATE: *August 15, 2018*
                                          TIME:
18                                        DEPT: *22*

19

TRANSMISSION VERIFICATION REPORT

```
                        TIME   : 08/15/2018 13:21
                        NAME   :
                        FAX    :
                        TEL    :
                        SER.# : BROJ0J200106
```

```
DATE,TIME            08/15  13:13
FAX NO./NAME         13026365454
DURATION             00:07:37
PAGE(S)              26
RESULT               OK
MODE                 STANDARD
                     ECM
```

*It is highly unlikely that an opposition will be filed, as this complaint was only filed, and served on 8-13-18, accordingly an attorney has not yet been assigned. When we contacted the defendants + defendants agent to process to provide notice they did not confirm whether an opposition would be filed. thank you.*

1 DWAYNE C. AND LINDA E. SMITH
547 Kingsport Avenue
2 Livermore, California, 94550
Telephone: (925) 998-5112
3 Email: lsmith5648@aol.com

4 DWAYNE C. SMITH and LINDA E. SMITH,
Pro Per Plaintiffs

5

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **IN AND FOR THE COUNTY OF ALAMEDA**

10 DWAYNE C. AND LINDA E. SMITH,            Case No. *R G 18916422*

11          Plaintiffs,

                                          **PLAINTIFFS' *EX PARTE* MOTION FOR**
12 vs.                                    **LEAVE TO RECORD LIS PENDENS;**
                                          **MEMORANDUM OF POINTS AND**
13                                        **AUTHORITIES IN SUPPORT THEREOF;**
                                          **AND DECLARTION OF DWAYNE C. AND**
14                                        **LINDA E. SMITH IN SUPPORT THEREOF;**
                                          **[PROPOSED] ORDER**
15 NATIONSTAR MORTGAGE, LLC aka MR.
COOPER; and DOES  1-5 inclusive,

16          Defendants.
                                          DATE: *August 15, 2018*
17                                        TIME:
                                          DEPT: 22
18

19

# EXHIBIT B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| DWAYNE AND LINDA SMITH<br>1547 Kingsport Avenue<br>Livermore, CA 94550<br><br>TELEPHONE NO.: (925) 998-5112    FAX NO.:<br>ATTORNEY FOR (Name): Plaintiffs Dwayne and Linda Smith in pro per | **ENDORSED**<br>**FILED**<br>**ALAMEDA COUNTY**<br><br>AUG 1 3 2018<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 2233 Shoreline Drive
MAILING ADDRESS: Same
CITY AND ZIP CODE: Alameda 94501
BRANCH NAME:

| CASE NAME: Dwayne and Linda Smith v. Nationstar Morgage, LLC | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000)  ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | RG18916422 |
| | | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☑ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

**2.** This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

**4.** Number of causes of action (specify): Nine

**5.** This case ☐ is ☑ is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 13, 2018
Dwayne and Linda Smith, In Pro Per
(TYPE OR PRINT NAME)                                    ▶ Dwayne Smith Linda E. Smith
                                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

**BY FAX**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DWAYNE C. AND LINDA E. SMITH,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NATIONSTAR MORTGAGE, LLC, aka MR. COOPER; and DOES 1-5 inclusive,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

AUG 13 2018

CLERK OF THE SUPERIOR COURT
By CURTIYAH GANTER
Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* George E. McDonald Hall of Justice

2233 Shoreline Drive
Alameda, California 94501

CASE NUMBER:
*(Número del Caso):* RG 18916422

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Dwayne and Linda Smith, 1547 Kingsport Avenue Livermore, California, 94550; (925) 998-5112

DATE: August AUG 1 3 2018     Chad Finke Clerk, by     CURTIYAH GANTER     , Deputy
*(Fecha)*                              *(Secretario)*                                            *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  DWAYNE C. AND LINDA E. SMITH
   1547 Kingsport Avenue
2  Livermore, California, 94550
   Telephone: (925) 998-5112
3  Email: lsmith5648@aol.com

4  DWAYNE C. SMITH and LINDA E. SMITH,
   Pro Per Plaintiffs
5

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             IN AND FOR THE COUNTY OF ALAMEDA

10                                  Case No.  RG18916425

11

12  DWAYNE C. AND LINDA E. SMITH,        VERIFIED COMPLAINT FOR:

13                    Plaintiffs,        1.  VIOLATION OF CALIFORNIA
                                             CIVIL CODE 2923.55 and 2923.5;
14                                        2.  VIOLATION OF CALIFORNIA
                                             CIVIL CODE § 2924.17;
15  vs.                                   3.  VIOLATION OF CALIFORNIA
                                             CIVIL CODE §§ 2924f and 2924b;
16                                        4.  BREACH OF CONTRACT;
                                          5.  BREACH OF GOOD FAITH AND
17                                            FAIR DEALING;
    NATIONSTAR MORTGAGE, LLC, aka        6.  FRAUDULENT
18  MR. COOPER; and DOES 1-5 inclusive,      MISREPRESENTATION;
                                          7.  VIOLATION OF CALIFORNIA
19                                            BUSINESS AND PROFESSIONS
                                             CODE SECTIONS 17200 ET SEQ.;
20                    Defendant.          8.  WRONGFUL FORECLOSURE, TO
                                             SET ASIDE TRUSTEE SALE AND
21                                           INJUNCTIVE RELIEF; AND,
                                          9.  QUIET TITLE.
22

23

24                                        [DEMAND FOR JURY TRIAL]

25

26  COME NOW Plaintiffs, DWAYNE C. SMITH and LINDA E. SMITH, who allege as follows:

27

28

                            VERIFIED COMPLAINT

**ENDORSED FILED ALAMEDA COUNTY**

AUG 1 3 2018

CLERK OF THE SUPERIOR COURT
By ──CURTIYAH GANTER──
                        Deputy

**BY FAX**

## PARTIES

1. At all times material to this Verified Complaint ("Complaint"), DWAYNE C. SMITH and LINDA E. SMITH ("Plaintiffs") were residents of the County of Alameda, in the State of California.

2. Plaintiffs are informed and believe and thereon allege that NATIONSTAR MORTGAGE, LLC also known as Mr. Cooper and DOES 1 through 5, inclusive ("Defendant") and each of them, are, and at all times relevant hereto were, a DE limited liability company purportedly authorized to conduct business in the State of California and conducting business within this judicial district in the County of Alameda on a regular basis.

3. Plaintiffs are informed and believe and thereon allege that each and every one of the named and unnamed Defendants herein were the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other, and are accordingly liable for all the acts and omissions of each Defendant.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 5, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein, as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiffs. At such time as Plaintiffs learn the true name and capacity of any Defendant named as a DOE herein, Plaintiffs will amend Plaintiffs' Complaint to identify said Defendants, and include accompanying charging allegations.

**VENUE**

5. Plaintiffs are informed and believe and thereon allege that a substantial part of the acts, omissions, transactions and/or occurrences giving rise to the causes of action hereinafter alleged took place within the County of Alameda in the State of California, and that the alleged damages exceed the minimum amount necessary to confer jurisdiction upon this Court.

6. Plaintiffs further allege that the Subject Property, as more specifically alleged hereinafter, is located within the County of Alameda, in the State of California.

**GENERAL ALLEGATIONS**

7. Real Property: At all times material to this Complaint, Plaintiffs were the lawful owner of certain residential real property located at 1547 Kingsport Avenue, Livermore, CA 94550 (hereinafter referred to as the "Subject Property").

8. Primary Residence: The Subject Property is, and at all times material to this Complaint was, Plaintiffs' primary residence and owner-occupied.

9. Deed of Trust Recitals - Written Agreement: On or about June 8, 2007, Plaintiffs entered into a Deed of Trust (hereinafter "DOT" or "Subject Loan") with lender in the total sum of $576,000. The DOT named Homecomings Financial, LLC as the Lender; Mortgage Electronic Registration Systems ("MERS") as the Beneficiary; Landamerica Southland Title as the Trustee; and, Plaintiffs as the Borrowers. A true and correct copy of this DOT is attached hereto as *Exhibit A* and incorporated herein by this reference. Subsequently, Plaintiffs made regular monthly installment payments pursuant to the aforementioned financing agreement.

10. <u>Assignment/Transfer</u>:  At some point after entering into the Deed of Trust, it appears that the beneficial interest or servicing was transferred first to U.S. Bank and then to Defendant NATIONSTAR.

11. <u>Financial Hardship</u>: On or about 4 years ago Plaintiff stopped making payments on the Subject Loan due to the following hardship(s): Plaintiffs are both in the building industry (Realtop and Flooring). In 2008 as a result of the economy, their businesses ceased making a profit.  Plaintiffs went from a 6-figure income to less than $20,000 a year for 2 years. Plaintiffs had enough money saved to pay the mortgage for 2 years but after 2009 with such little income it became very difficult. Plaintiffs' businesses started improving but never recovered completely.  Plaintiffs were focusing all the resources possible to pay their mortgage.

12. <u>Mr. Balmacoon Was Referred by US Bank</u>:  It appears that at some point after entering into the Subject Loan, U.S. Bank was assigned the Subject Loan.  In or about 2013, U.S Bank sent Plaintiffs a letter advising them of a company that could help Plaintiffs through their financial difficulty. Plaintiffs contacted that company and were advised that the company could help them secure a modification for the cost of approximately One Thousand Four Hundred Dollars ($1400.00) per month. Plaintiffs received a call from Mr. Balmacoon from New York City who was given Plaintiffs' information from the aforementioned company referred by U.S. Bank.  Plaintiffs began working with Mr. Balmacoon toward the end of 2013 and paid a $1,000 start-up fee. Mr. Balmacoon advised Plaintiffs to no longer contact U.S. Bank as it would be too confusing with both Mr. Balmacoon and Plaintiffs communicating with U.S. Bank. Plaintiffs followed his advice.  In 2015, Plaintiffs buried eight (8) loved ones, which cost them emotionally and financially. Plaintiffs were forced to rely on Mr. Balmacoon

however it appears that every time Plaintiffs were close to being approved for a modification, an occurrence would prevent such approval. Plaintiffs were also told they could not make payments during this time unless Plaintiffs paid the default in full. In 2017, Mr. Balmacoon suggested Plaintiffs place the Subject Property in a Trust and attorneys would manage the trust. This trust would cost One Thousand Two Hundred Dollars ($1200.00) to form and Three Hundred Dollars ($300.00) a month to manage, thereby increasing Plaintiffs' monthly payments to Eight Hundred Dollars ($800.00). Plaintiffs followed direction, yet no trust exists to this day.  Plaintiffs were advised it would be best to add their son to title, which Plaintiffs did.  Unbeknownst to Plaintiffs, Mr. Balmacoon filed a Bankruptcy Petition in New York to prevent the Subject Property from proceeding to foreclosure sale. Plaintiffs began getting notices in the mail informing them of this occurrence.

13. <u>Modification Attempts</u>:  During this time, i.e. from 2013 to present day, Plaintiffs continuously submitted complete loan modification applications.

14. <u>Notice of Default</u>:  On or about February 10, 2017, Kari Sheehan as authorized representative for Aztec Foreclosure Corporation, executed a fraudulent Notice of Default based upon a 2923.55 declaration executed on **December 10, 2013 – nearly 3 ½ years earlier**!  This unlawful Notice of Default was recorded on February 14, 2017.  A true and correct copy of this NOD is attached hereto as ***Exhibit B*** and incorporated herein by this reference.

15. <u>2017 Notice of Trustee Sale</u>:  On May 27, 2017 Elaine Malone as assistant vice-president to Aztec Foreclosure, Defendants' authorized agent, executed a fraudulent Notice of Trustee Sale, which was recorded on May 30, 2017. This notice is fraudulent as following a facially defective and invalid Notice of Default. A true and correct copy of this May 30, 2017 NOTS is attached hereto as ***Exhibit C*** and incorporated by this reference.

16. Never Received Notice of Upcoming Sale Despite Receiving the NOD in 2017: U.S. Bank and Defendant NATIONSTAR always sent foreclosure notice(s) via certified mail (as required), along with several copies via regular mail. Oddly in May 2018, Plaintiffs never received any notice regarding the upcoming trustee sale, which took place on or about June 5, 2018.

17. Notice that Sale Had Occurred, Received After the Fact: On or about June 4, 2018, Plaintiffs and/or their agent spoke with an authorized agent at Defendant NATIONSTAR who advised that a sale was not scheduled to proceed. When Plaintiffs returned home after a short missionary trip on June 11, 2018, there was a notice posted on their door from the Defendant, stating that their home had been sold. A true and correct copy of this notice is attached hereto as *Exhibit D* and incorporated herein by this reference.

18. Unlawful Trustee Sale Took Place and now in Escrow: An unlawful trustee sale occurred on June 5, 2018, and Defendant NATIONSTAR "purchased" the Subject Property via a credit bid. Defendants are now attempting to quickly transfer the Subject Property to a third party in an effort to deprive Plaintiffs' of the Subject Property. Specifically, Defendants have transferred the Subject Property to Paul Singh who is scheduled to close escrow on or about August 22, 2018. Please be advised that to date, Plaintiffs have not been provided with a Trustee's Deed Upon Sale.

19. Plaintiffs NEVER Provided with Required Notice of Sale: At no point prior to the unlawful trustee sale occurring, were Plaintiffs provided with the required notice of sale in the manner prescribed by Section 2924f and Section 2924b.

20. No Bona Fide Third-Party Purchaser: Despite the fact that the trustee sale took place, Plaintiffs allege there was never any sale of the Subject Property to a bona fide third-party

purchaser because Defendant was the foreclosing beneficiary. Despite the fact that Defendants have attempted to transfer the Subject Property to Paul Singh. In or about the end of July or beginning of August, Mr. Singh approached Plaintiffs at the Subject Property and claimed to be the "new owner". Plaintiffs corrected Mr. Singh advising that a sale had not been completed as of yet. Mr. Singh said that escrow was scheduled to close shortly. In response Plaintiffs advised Mr. Singh of the wrongful conduct of Defendant NATIONSTAR and that Plaintiffs were in the process of filing suit thereby placing the Subject Property at the center of litigation. In the event Mr. Singh chooses to close escrow he cannot be deemed a third party purchaser as he is choosing to proceed with the acquisition of the Subject Property despite being aware that it is the subject of litigation. Immediately upon being made aware of the litigation, Mr. Singh should have cancelled escrow. Rather, he chose not to and has since assumed the risk associated with such a consummation of sale of a property that is the subject of a lawsuit.

21. <u>Defendant Fraudulently Misrepresented and Promised That Sale Would not Take Place</u>: Prior to the June 5, 2018 sale of their home, Plaintiffs were explicitly advised that a trustee sale was not scheduled to proceed. Specifically on or about June 4, 2018, when Plaintiffs and/or their agent contacted Defendant NATIONSTAR to determine if a sale was scheduled, they were advised that a sale would not proceed. Plaintiffs were not properly notified of sale until after it had occurred. During Plaintiff's conversation(s) with Defendant's authorized representative, he failed to advise Plaintiffs that a trustee sale was going to take place and instead promised Plaintiffs that a trustee sale would not take place while Plaintiffs' loan modification application was being reviewed.

22. <u>Wrongful Conduct</u>:  Plaintiffs alleges upon information and belief that Defendant engaged in the following wrongful conduct: (a) The lender never gave Plaintiffs proper notice of the sale, (b) Plaintiffs discovered they mailed some notices to an address in New Jersey where they do not reside and have never heard of before, and (c) When Plaintiffs called Defendant's representative, he said the sale had been cancelled and no sale date was scheduled. Then, 3 days later the Lender sold the Subject Property.

23. <u>TENDER</u>: Several courts have recognized a general equitable exception to applying the tender rule where it would be inequitable to do so. *Onofrio v. Rice* 55 Cal. App. 4th 413.424 (1997)([w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale); *Robinson v. Bank of America* 12-CV-00494-RMW, 2012WL, 1932842 at 3(N.D. Cal. May 29, 2012) (inequitable to apply tender rule in certain circumstances); *Bowe v. Am. Mortg.Network, Inc.*, CV 11-08381 DDP SHX, 2012 WL 2071759, at 2 (C.D. Cal. June 8, 2012); *Gianniniv.American Home Mortg. Servicing, Inc.*, No. 11-04489 TEH, 2012 WL 298254, at 3 (N.D. Cal. Feb.1,2012).

   a.   Plaintiffs alleges that one or more of the following exceptions to the tender requirement apply herein: (i) the value of Plaintiffs' monetary claims and set-offs against the beneficiary are equal to or greater than the value of the secured debt; (ii) it would be inequitable to impose a tender requirement on Plaintiffs under the circumstances, since the foreclosure proceeded pursuant to blatantly fraudulent and unlawful conduct in direct violation of the Civil Code; and (iii) Plaintiffs did not rely on equity to challenge the foreclosure, as the foreclosure is statutorily invalid in direct violation of the Homeowner's Bill of Rights.

VERIFIED COMPLAINT

b.   Plaintiffs alleges that if necessary, Plaintiffs are willing and able to tender an amount

deemed necessary by this Court in order to proceed with Plaintiffs' claims against

the Defendant.

### FIRST CAUSE OF ACTION
**FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2923.55 and/or 2923.5**
**(Against All Defendants)**

24. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 23 herein as though set forth completely in this cause of action.

25. California Civil Code § 2923.5 requires that, prior to execution and recordation of Notice of

Default, the mortgagee, beneficiary or authorized representative contact the borrower in

person or by telephone in order to assess the borrower's financial situation, explore options for

the borrower to avoid foreclosure, and advise borrower as to his/her right   to a meeting within

fourteen (14) days with the lender to discuss their options further.  Section 2923.5 further

requires that the NOD contain a Declaration indicating compliance with this requirement.

26. Defendant failed to comply with the requirements of California Civil Code Section 2923.5 by:

a.   Not contacting the borrowers in person or by telephone in order to assess the

borrowers' financial situation and advise them as to their right to a meeting within 14

days prior to executing the NOD; and

b.   By failing to provide the required declaration indicating compliance with Section

2923.55 or 2923.5.

c.   By using a declaration executed at least 3 ½ years prior to the execution of the NOD

verifying the fact that Defendants did not comply with the intention of the statute,

which was to provide Plaintiffs with an opportunity to

9

VERIFIED COMPLAINT

27. Defendant never contacted Plaintiffs by telephone and never left a message for them on their voicemail. Defendant never contacted Plaintiffs via mail and advised of their aforementioned rights. In so doing, Defendant failed to comply with the stringent yet patently lucid requirements of the California Civil Code Section 2923.55 (pursuant to which they executed the declaration) or 2923.5 which remains part of the HBOR currently.

28. Any loan modification and/or communications regarding loan modifications received by Plaintiffs was done at their own behest and not by and through the Defendant. The fact that Plaintiffs attempted to receive a loan modification before the NOD was issued does not replace or forgive Defendants duty.

29. Prejudice: As the result of Defendant's failure to comply with Section 2923.55 or 2923.5, Plaintiffs suffered prejudice. Plaintiffs lost ownership and use of the Subject Property to the benefit of Defendant as the Subject Property proceeded to an unlawful trustee sale. Plaintiffs were not made aware of Plaintiffs' right to an in person meeting, which Plaintiffs would have surely requested and attended. Defendants never advised Plaintiff of direct communication regarding a modification. Defendant was required to communicate Plaintiffs' options to avoid foreclosure prior to the execution of the NOD, but instead simply failed to communicate any such option forcing the Subject Property to an unlawful trustee sale. Further verifying this failure to comply is the fact **that Defendants relied on a Declaration executed in 2013, when the NOD was executed in 2017**. Plaintiffs should have been provided with all of Plaintiffs' options to avoid foreclosure, and advised as to a manner to achieve such option(s), including the right to discuss all such options in person within fourteen (14) days, as was Plaintiffs' right, and as to which Plaintiffs were never advised, all to the benefit of the Defendant. Had Defendant complied with Section 2923.5, Plaintiff would have been advised

of their right to an in person meeting and various options to avoid foreclosure. Plaintiffs could have and would have qualified for a modification pursuant to Defendant's guidelines.

30. <u>Injunctive Relief</u>: Due to Defendant's non-compliance with Civil Code Section 2923.55 or 2923.5, Plaintiffs are likely to succeed in Plaintiffs' claim for relief. Plaintiffs seeks injunctive relief rescinding the unlawful trustee sale and preventing Defendant from selling or transferring their interest in the Subject Property to another party. The hardship incurred by Plaintiffs if the Subject Property and equity is lost as a result of a trustee sale is permanent and severe; whereas the hardship incurred by Defendant if the foreclosure process is reinitiated following the conclusion of the subject litigation, is transitory and minimal. Plaintiffs are entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

**SECOND CAUSE OF ACTION**
**FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2924.17**
**(Against All Defendants)**

31. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 30 herein as though set forth completely in this cause of action.

32. <u>C.C.C. Section 2924.17 Requirements</u>: California Civil Code Section 2924.17 states the following in pertinent part: (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence. (b) Before recording or filing any of the

11
VERIFIED COMPLAINT

documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

33. Material Violation of 2924.17: Defendants violated C.C.C. Section 2924.17 by not properly reviewing Plaintiffs' loan information, and verifying whether Defendant had the right to foreclose pursuant to competent and reliable evidence.  Importantly, Defendants failed to rely on a valid and competent 2923.55 Declaration and instead executed the 2017 NOD pursuant to a 2013 declaration, verifying the NOD's invalidity.  Specifically, Defendants engaged in the following unlawful conduct in direct violation of Section 2924.17:

    a. Executing and recording the fraudulent Notice of Default pursuant to an invalid declaration from 2013; and thereafter executing and recording a fraudulent and invalid Notice of Trustee Sale pursuant to the facially invalid NOD; and,

    b. Failing to confirm whether Plaintiffs had, in fact, been contacted to assess their financial situation and non-foreclosure alternatives.

34. Prejudice: As the result of Defendant's failure to comply with Section 2924.17, Plaintiffs have suffered prejudice. Plaintiffs have lost ownership and use of the Subject Property to the benefit of Defendant as the Subject Property proceeded to an unlawful trustee sale.  Plaintiffs were not made aware of Plaintiffs' options to avoid foreclosure in a timely manner, and incurred additional fees, costs and interest, to the benefit of Defendant. Defendant never advised Plaintiffs of Plaintiffs' options or right to an in person meeting or direct communication regarding a modification. Moreover, Defendant failed to substantiate Defendant's right to foreclose.  Defendant was required to communicate Plaintiffs' options to avoid foreclosure prior to the execution of the NOD, but instead simply failed to communicate

any such option forcing the Subject Property to an unlawful trustee sale. Plaintiffs should have been provided with all of Plaintiffs' options to avoid foreclosure, and advised as to a manner to achieve such option(s), including the right to discuss all such options in person within fourteen (14) days, as was Plaintiffs' right, and as to which Plaintiffs were never advised, all to the benefit of Defendant.  Had Defendant complied with Section 2924.17, Plaintiffs would have been advised of their right to an in person meeting and various options to avoid foreclosure; additionally, Defendant would have substantiated any alleged default and Defendant's right to foreclose, which would have prevented Defendant from foreclosing as they did not have any such right as alleged in detail in this Complaint.  Plaintiffs could have and would have qualified for a modification pursuant to Defendant's guidelines.

## THIRD CAUSE OF ACTION
### FOR VIOLAITON OF CALIFORNIA CODE  §§ 2924f and 2924b
### (Against All Defendants)

35. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 34 herein as though set forth completely in this cause of action.

36. Pursuant to Civil Code Section 2924f and 2924b, Defendant was required to provide notice of the trustee sale via certified mail and posting.

37. Violation:  At no point did Defendant or their agents mail to Plaintiffs via certified mail or post on a conspicuous location on the Subject Property a NOTS as required by the above-referenced sections of the Civil Code. Simultaneously Defendants denied that a trustee sale was scheduled to proceed when Plaintiffs and/or their agent contacted Defendants to determine whether a sale was scheduled.  Accordingly, Plaintiffs were completely without any notice that Subject Property was scheduled to proceed to sale on June 5, 2018.

38. <u>Prejudice</u>:  Plaintiffs have been prejudiced by Defendant's failure to comply with the Civil Code as they have lost title to the Subject Property and are in the process of losing possession.  Defendants "purchased" the Subject Property via a credit bid and are now in the process of transferring the Subject Property to a third party named Paul Singh for which escrow is scheduled to close on August 22, 2018.  As such, Plaintiffs have already lost title to the Subject Property and now stand to lose possession as well demonstrating clear prejudice.  Defendant's failure to serve the Notice of Sale as required combined with their affirmative denial that a sale was scheduled to take place has severely prejudiced Plaintiffs.

39. <u>Injunctive Relief</u>:  Plaintiffs seek injunctive relief preventing escrow from closing on August 22, 2018.

40. <u>Damages</u>:  As a result of Defendant's violation of Section 2924 Plaintiffs have been damaged in a sum to be determined according to proof at trial.

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against All Defendants)

41. Plaintiffs re-allege and incorporate by reference the general allegations set forth above in paragraphs 1 through 40 herein as though set forth completely in this cause of action.

42. <u>Deed of Trust Recitals – Written Agreement</u>: Please see *Exhibit A* attached hereto and incorporated herein by this reference.

43. <u>Plaintiffs Allege a Written Agreement with Defendant</u>: Subsequent to entering into the DOT, Plaintiffs allege that Defendant was assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiffs have an agreement with at least one of the above-referenced Parties, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of

14

VERIFIED COMPLAINT

that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other. It is pursuant to this agreement that Defendant has collected monthly payments on the Subject Loan claiming a beneficial interest in the Subject Property.

44. <u>Defendant Materially Breached the DOT</u>:  Defendant forced Plaintiffs into the foreclosure process despite the fact that Plaintiffs were not in default thereby breaching the terms of the DOT.

45. <u>Defendant Also Materially Breached Paragraph 22 of the Deed of Trust</u>:  Defendant materially breached the DOT by failing to provide Plaintiffs with notice of their right to bring a lawsuit to allege defenses to the acceleration and sale.  Specifically, the DOT, Paragraph 22, states in part:

> a. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and **the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."** (Emphasis added).  Please see Paragraph 22 of *Exhibit A* attached hereto and incorporated herein by this reference.

> b. Additionally, in the second section of paragraph 22, the DOT states:

> If Lender invokes the power of sale, Lender shall execute or cause Trustee execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. **Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law."** (Emphasis added).  Please see

VERIFIED COMPLAINT

Paragraph 22 of *Exhibit A* attached hereto and incorporated herein by this reference.

46. <u>NOD is Fraudulent</u>:  Rather, the NOD fraudulently states:  "Following the expiration of the time period referred to in the first paragraph of this notice... you have <u>only the legal right to stop the sale of your property</u> by paying the entire amount demanded by your creditor." (Emphasis added).  Please *Exhibit B* at page 2, paragraph 2, attached hereto and incorporated herein by this reference.  The NOD is thus facially fraudulent, since Plaintiffs' only legal right to stop the sale is not by payment only (especially since there was no actual default to pay), as Defendant was required to provide Plaintiffs with notice of their right to bring a court action to challenge the default as dictated by Paragraph 22 of the Deed of Trust.  *See Exhibit A*

47. <u>Acceleration Before Foreclosure</u>:  Just to clarify, the DOT contains a clause that requires the lender to send a notification to Plaintiffs informing them that the Subject Loan is in default before it was allowed to accelerate the Subject Loan and proceed with foreclosure. More importantly, this notice was required to include language advising Plaintiffs that they were entitled to bring a court action asserting defenses to the acceleration and sale.

48. <u>Plaintiffs Never Received any Notice</u>:  Defendant clearly did not comply with Paragraph 22 of the DOT. Defendant never prepared or provided Plaintiffs with any such notice. Moreover, Plaintiffs never received the NOD or NOTS regarding the June 5, 2018 sale, which would have provided Plaintiffs with notice of any purported default or breach, or a notice of Plaintiffs' right to file a lawsuit to challenge the default.

49. <u>Damages</u>:  As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been prejudiced, have suffered, and will continue to suffer, general and special damages including the loss of their home from foreclosure, loss of equity in the Subject Property,

costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as interest, fees and costs including, without limitation, attorney's fees.

**FIFTH CAUSE OF ACTION**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against All Defendants)**

50. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 49 herein as though fully set forth in this cause of action.

51. Covenant of Good Faith:  Plaintiffs allege that at all times there existed an implied covenant of good faith and fair dealing requiring Defendant to safeguard, protect, or otherwise care for the assets and rights of Plaintiffs. Said covenant prohibited Defendant from activities interfering with or contrary to the rights of Plaintiffs. In addition to being implied in the above-referenced DOT, under the statutory scheme for loss mitigation alternative review and non-judicial foreclosure, the covenant of good faith is coextensive with Defendant's duty to properly review Plaintiffs for loss mitigation alternatives and conduct the foreclosure proceedings fairly, openly and in good faith.

52. Deed of Trust Recitals – Written Agreement: Please see *Exhibit A* attached hereto and incorporated herein by this reference.

53. Plaintiffs Allege a Written Agreement with Defendant: Subsequent to entering into the DOT, Plaintiffs allege that Defendant was assigned a beneficial interest, and/or substituted in as trustee and/or servicer, and that accordingly, Plaintiffs have an agreement with at least one of the above-referenced Parties, and each of them, as they were and are the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of

17
VERIFIED COMPLAINT

that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other. It is pursuant to this agreement that Defendant has collected monthly payments on the Subject Loan claiming a beneficial interest in the Subject Property.

54. <u>Breach of Good Faith and Fair Dealing</u>:  Defendant's interfered with Plaintiffs' right to receive the benefits of the above-referenced agreement and breached the covenant of good faith and fair dealing implied in the DOT, by doing the following:

    a.  Failing to provide valid documents to proceed with foreclosure, including a valid NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead, Defendant recorded the false, fraudulent and improper NOD, NOTS and TDUS, when there was no default and Plaintiffs had not been contacted to asses their financial situation or discuss non-foreclosure alternatives;

    b.  Failing to advise Plaintiffs of their right to bring legal action to challenge the acceleration and instead fraudulently advising them that their only right to prevent the sale was to pay the amount demanded by Defendant in the NOD despite the fact that they were not actually in default;

    c.  Failing to contact Plaintiffs to assess their financial situation and to inquire about other non-foreclosure alternatives;

    d.  Commencing foreclosure proceedings upon the Subject Property lawfully belonging to Plaintiffs without complying with the stringent requirements of the Civil Code;

    e.  Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting a trustee sale; and,

f.  Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of

trustee's sale.

55. <u>Damages</u>:  As a direct and proximate result of Defendant's breach of the covenant of good

faith and fair dealing, Plaintiffs have been prejudiced, have suffered, and will continue to

suffer, general and special damages including the loss of the Subject Property, loss of equity

in the Subject Property, costs and expenses related to protecting themselves, reduced credit

scores, unavailability of credit, increased costs of credit, reduced availability of goods and

services tied to credit ratings, increased costs of those services, as well as interest, fees and

costs including, without limitation, attorney's fees and costs, all in an amount according to

proof at the time of trial.

**SIXTH CAUSE OF ACTION**
**FOR FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

56. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 55 herein as though set forth completely in this cause of action.

57. Defendant's made various fraudulent and intentional misrepresentations of fact, including but

not limited to the following:

a.  <u>Fraudulent Notice of Default</u>: the NOD fails to comport with paragraph 22 of the

DOT, which states in part:

i.  **Acceleration; Remedies.** Lender shall give notice to Borrower prior to

acceleration    following Borrower's breach of any covenant or agreement in

this Security Instrument (but not prior to acceleration under Section 18 unless

Applicable Law provides otherwise). The notice shall specify: (a) the default;

(b) the action required to cure the default; (c) a date, not less than 30 days from

19
VERIFIED COMPLAINT

the date the notice is given to Borrower, by which the default must be cured;

and (d) that failure to cure the default on or before the date  specified in the

notice may result in acceleration of the sums secured by this Security

Instrument and sale of the Property. The notice shall further inform Borrower

of the right to  reinstate after acceleration and the right to bring a court action

to assert the non-existence of a default or any other defense of Borrower to

acceleration and sale. Please see Paragraph 22 of *Exhibit A* attached hereto and

incorporated herein by this reference.

ii.  The NOD is Fraudulent, as it fraudulently states: "Following the expiration of

the time period referred to in the first paragraph of this notice... you have only

the legal right to stop the sale of your property by paying the entire amount

demanded by your creditor." Please see *Exhibit B* at page 2, paragraph 3,

attached hereto and incorporated herein by this reference. Not only does the

NOD fail to provide a valid 2923.5 declaration, thus rendering it facially

defective and void, it is also facially fraudulent, since Plaintiffs' only legal

right to stop the sale is not by payment only, and Defendants were required to

provide Plaintiffs with notice of their right to bring a court action to challenge

the default.

b.  Fraudulent Advised that Sale Not Scheduled:  On June 4, 2018, an authorized

representative for Defendant NATIONSTAR (Plaintiffs are not aware of this

authorized representatives name but will be able to ascertain through discovery and

amend this cause of action to reflect such name) advised Plaintiffs and/or their agent

that a trustee sale of the Subject Property was not currently scheduled.

58. <u>Knowledge of Falsity</u>: At the time Defendant made the aforementioned misrepresentations, they knew they were false and were made solely to induce reliance upon them by Plaintiffs, namely that Plaintiffs believe that the foreclosure process was proceeding in a statutorily valid manner, such that Plaintiffs would not challenge the foreclosure. Defendant further made the representations that a trustee sale was not scheduled to proceed in order for Plaintiffs to refrain from taking any action to prevent the trustee sale from taking place, including borrowing money and reinstating the Subject Loan, filing for Chapter 13 bankruptcy or filing a civil action and seeking injunctive relief preventing the sale.

59. <u>Intent to Deceive</u>: The aforementioned misrepresentations regarding the documents necessary to proceed with foreclosure were made with the intent to deceive Plaintiffs and prevent Plaintiffs from taking precautionary measures to protect Plaintiffs from the foreclosure sale of the Subject Property, and from losing Plaintiffs' interest in the Subject Property. Further evidence of Defendant's intent to deceive is the fact that Defendants executed and recorded a Notice of Default in 2017 pursuant to a 2923.55 Declaration executed in 2013, and that Defendants failed to advise Plaintiff that a trustee sale was scheduled to proceed when Plaintiffs and/or their agents contacted Defendants inquiring as to a sale date.

60. <u>Reliance</u>: Plaintiffs reasonably relied on the above-referenced fraudulent misrepresentations made by Defendant as Defendant was/is a respectable financial institution, alleged beneficiary of the Promissory Note, and the lender, trustee and/or servicer with which Plaintiffs believed they were contractually bound.

61. <u>Reasonable and Detrimental Reliance</u>: Plaintiffs clearly relied on Defendant's misrepresentations to Plaintiffs' detriment as they failed to hire legal counsel, file a civil action prior to the trustee sale and/or file for Chapter 13 bankruptcy and protect and preserve

their interests in the Subject Property in a timely manner prior to the unlawful trustee sale, and

suffered foreclosure to the benefit of Defendants. Alternatively, Plaintiffs failed to borrow

money and reinstate the Subject Loan or file a timely Chapter 13 reorganization prior to the

unlawful trustee sale. All of the aforementioned actions would have preserved Plaintiffs'

interest in the Subject Property prior to the unlawful trustee sale.

62. Damages: As a direct and proximate result of Defendant's fraudulent misrepresentations,

Plaintiffs have been prejudiced, have suffered, and will continue to suffer, general and special

damages including being subjected to the foreclosure process, suffering wrongful foreclosure,

being subjected to an unlawful detainer action and all related attorney's fees and costs in

defending such action, loss of equity in the Subject Property, loss of the Subject Property,

costs and expenses related to protecting themselves, reduced credit scores, unavailability of

credit, increased costs of credit, reduced availability of goods and services tied to credit

ratings, increased costs of those services, as well as fees and costs including, without

limitation, attorney's fees and costs, all in an amount according to proof at the time of trial.

63. Punitive Damages: Defendant's are guilty of oppression, fraud and malice. "Malice" is

defined in the statute as conduct "intended by the defendant to cause injury to plaintiff, or

despicable conduct that is carried on by the defendant with a willful and conscious disregard

for the rights or safety of others." In this case, it is clear that Defendant engaged in despicable

conduct with a willful and conscious disregard for the rights of Plaintiffs by fraudulently

executing documents necessary to proceeded with foreclosure of the Subject Property or

provide notice to Plaintiffs of the foreclosure. Moreover, Defendant's proceeded with a

foreclosure of the Subject Property while Plaintiffs' complete application was still in active

modification review and without having provided Plaintiffs' with a written denial of their

application including the reason(s) for denial and their right to appeal such denial within 30

days. "Oppression" means despicable conduct that subjects a person to cruel and unjust

hardship in conscious disregard of that person's rights." In this case Defendant subjected

Plaintiffs to cruel and unjust hardship by fraudulently executing necessary documents as

indicated in detail herein above, and proceeding with an unlawful trustee sale of the Subject

Property while Plaintiffs' complete loan modification application was in active review as

discussed in detail herein above. Such egregious conduct was to the benefit of Defendant and

resulted in cruel and unjust hardship to Plaintiffs. "Fraud" is "an intentional misrepresentation,

deceit, or concealment of a material fact known to the defendant with the intention on the part

of the defendant of thereby depriving a person of property or legal rights or otherwise causing

injury." It is clear by this thoroughly pleaded cause of action that Defendant engaged in fraud

and thereby unnecessarily forced Plaintiffs to suffer a wrongful foreclosure to the benefit of

Defendant and to suffer potential eviction from their home. The aforementioned behavior

exhibited by the Defendant was despicable, vile, outrageous, and outside the bounds of human

decency, sufficient to justify an award of exemplary and punitive damages.

### SEVENTH CAUSE OF ACTION
**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
SECTIONS 17200 ET SEQ.
(Against All Defendants)**

64. Plaintiffs re-allege and incorporates by reference the general allegations made in paragraphs

1 through 63 herein as though fully set forth in this cause of action.

65. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair

competition, which means and includes any "fraudulent business act or practice . . ." and

conduct, which is "likely to deceive" and is "fraudulent" within the meaning of Section

17200.

66. As more fully described above, the Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

67. Specifically, the Defendants engaged in deceptive business practices with respect to the foreclosure process by conspiring to defraud borrowers. Defendants proceeded with foreclosure without having rendered a written determination of borrowers' loss mitigation applications. Accordingly, borrowers believe their applications are under review, during which time Defendants proceed with a foreclosure in blatant violation of the Civil Code. Specifically, Defendants engage in the following unlawful and fraudulent conduct:

    a.  Failing to provide valid documents to proceed with foreclosure, including a valid NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead, Defendants recorded the false, fraudulent and improper NOD, NOTS and TDUS, when there was no default and Plaintiffs had not been contacted to asses their financial situation or discuss non-foreclosure alternatives;

    b.  Failing to advise Plaintiffs of their right to bring legal action to challenge the acceleration and instead fraudulently advising them that their only right to prevent the sale was to pay the amount demanded by Defendants in the NOD despite the fact that they were not actually in default;

    c.  Failing to contact Plaintiffs to assess their financial situation and to inquire about other non-foreclosure alternatives;

    d.  Commencing foreclosure proceedings upon the Subject Property lawfully belonging to Plaintiffs without complying with the stringent requirements of the Civil Code;

  e. Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting a trustee sale; and,

  f. Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of trustee's sale.

68. The Defendants failed to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law. Defendants proceed with trustee sales without complying with the stringent requirements of the Civil Code or HBOR and without providing the necessary and requisite notices prior to proceeding to a trustee sale.  Moreover, Defendants misrepresent whether a sale is going to take place to intentionally deprive borrowers of their homes.

69. Additionally, the Defendants engaged in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings. The scheme implemented by the foreclosing Defendants is designed to defraud California consumers and enrich the Defendants.

70. The foregoing acts and practices have caused substantial harm to California consumers.

71. The foregoing acts and practices have caused substantial harm to California consumers.

72. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the foreclosing Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees, other improper fees and charges, and negative credit scores.

73. By reason of the foregoing, the foreclosing Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and

other California consumers who have been harmed, and/or be enjoined from continuing in

such practices pursuant to California Business & Professions Code Sections 17203 and

17204. Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as

available under California Business and Professions Code Sec. 17200 and related sections.

**EIGTH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE, TO SET ASIDE TRUSTEE SALE**
**AND INJUNCTIVE RELIEF**
**(Against All Defendants)**

74. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in

paragraphs 1 through 73 herein as if fully set forth in this cause of action.

75. A claim for wrongful foreclosure arises when the lender, mortgagee or authorized agent fails

to comply with the statutory provisions regulating non-judicial foreclosures in California and

proceeds to conduct an invalid trustee sale of the Subject Property.

76. Elements for Action for Damages: The elements of a common-law cause of action for

damages for wrongful foreclosure are: (1) Trustee or mortgagee caused an illegal, fraudulent

or willfully oppressive sale of real property; (2) pursuant to a power of sale contained in a

mortgage or deed of trust; and (3) the Trustor or mortgagor sustained damages. (*Munger v.*

*Moore* (1970) 11 Cal. App. 3d 1, 7; see 4 *Witkin, Sum. Of Cal. Law* (10th ed. 2005) *Secured*

*Transactions in Real Property*, §168.)

77. Tender: Please see Paragraph 23 herein above, incorporated herein by this reference.

78. In this case Defendant caused an illegal, fraudulent and willfully oppressive sale of the

Subject Property pursuant to a power of sale contained in the deed of trust by engaging in the

following conduct:

a.  Failing to provide valid documents to proceed with foreclosure, including a valid

NOD, which provides the required C.C.C. Section 2923.55 declaration, and failing to

26
VERIFIED COMPLAINT

provide the required notice detailed in Paragraph 22 of the Deed of Trust. Instead,

Defendants recorded the false, fraudulent and improper NOD, NOTS and TDUS,

when there was no default and Plaintiffs had not been contacted to asses their financial

situation or discuss non-foreclosure alternatives;

b.  Failing to advise Plaintiffs of their right to bring legal action to challenge the

acceleration and instead fraudulently advising them that their only right to prevent the

sale was to pay the amount demanded by Defendants in the NOD despite the fact that

they were not actually in default;

c.  Failing to contact Plaintiffs to assess their financial situation and to inquire about other

non-foreclosure alternatives;

d.  Commencing foreclosure proceedings upon the Subject Property lawfully belonging to

Plaintiffs without complying with the stringent requirements of the Civil Code;

e.  Failing to comply with the Civil Code and Homeowner's Bill of Rights in conducting

a trustee sale; and,

f.  Failing to mail or otherwise provide Plaintiffs with any notice of default or notice of

trustee's sale.

79. Rescission of Sale and Injunctive Relief: Due to Defendant's non-compliance with the Civil

Code as discussed herein above, Plaintiffs are likely to succeed in Plaintiffs' claim for relief.

Plaintiffs seeks a rescission of the trustee sale and injunctive relief preventing Defendants

from selling or transferring the Subject Property to a third party. The hardship incurred by

Plaintiffs if the Subject Property and equity is lost as a result of a trustee sale is permanent

and severe; whereas the hardship incurred by Defendants if the foreclosure process is

reinitiated following the conclusion of the subject litigation is transitory and minimal.

VERIFIED COMPLAINT

Plaintiffs are entitled to such relief as set forth in this Cause of Action including any statutory relief, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated.

80.  Underline{Damages}: As a direct and proximate result of Defendants' wrongful foreclosure of the Subject Property, Plaintiffs have been damaged in a sum to be determined according to proof at Trial. Without limiting the damages as described elsewhere in this Complaint, Plaintiffs' damages arising from this Cause of Action also include loss of the Subject Property and equity, costs and expenses related to protecting themselves, reduced credit score, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to his credit rating, increased costs of those services, as well as fees and costs. Plaintiffs seek damages sufficient to compensate Plaintiffs for all detriment proximately caused by Defendant's willful, fraudulent and oppressive wrongful foreclosure in a sum equivalent to at least the value of the property at the time of the sale in excess of the mortgage and lien against the property (*Munger v. Moore*).

### NINTH CAUSE OF ACTION
### FOR QUIET TITLE
### (Against All Defendants)

81. Plaintiffs re-allege and incorporates by reference the general allegations set forth above in paragraphs 1 through 80 herein as if fully set forth in this cause of action.

82. Underline{Plaintiffs' Lawful Ownership of Subject Property}: Plaintiffs are the sole owners in fee simple of the Subject Property.

83. Underline{Tender}: Please see Paragraph 23, hereinabove, which is incorporated herein by this reference.

84. Underline{Defendant Is Not a Third-Party Bona Fide Purchaser in Good Faith}: Please see paragraph 20 herein above, which is incorporated herein by this reference.

VERIFIED COMPLAINT

85. Illegally Conducted Trustee Sale: Plaintiffs alleges that the trustee sale was conducted fraudulently and illegally as alleged in detail throughout this Complaint (i.e. invalid NOD due to being facially fraudulent and invalid Declaration from 2013, etc.).

91. Defendants' Adverse Claim: Defendants claim an interest in the Subject Property that is averse to Plaintiffs' interest by operation of an invalid deed that was obtained unlawfully, through fraud and deceit, and without Defendant acting as a bona fide third-party purchaser of the Subject Property in good faith, and for value. Defendant's purported deed and/or any such resulting Trustee's Deed Upon Sale, is pursuant to fraud and unlawful activity and, therefore, is void and without legal effect.

92. Quiet Title: Plaintiffs seek in this action to quiet title against the claim of Defendants, as well as all other Defendants, as to the Subject Property. The claims of Defendant are without merit and through Defendant's own fraud, deceit, and substantial conduct evidencing bad faith, and Defendants have no right, title, or interest whatsoever in the Subject Property, or any part thereof. Plaintiffs seek to quiet title in the Subject Property solely in the name of the Plaintiffs, free and clear of any claimed interest by Defendant and seeks to so quiet title as of the date of the commencement of this above-captioned civil action.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for legal and equitable relief against Defendant(s), as follows:

(1) For a rescission of the trustee sale;

(2) For a temporary and permanent injunction preventing Defendant(s) from transferring or selling the Subject Property to a third party;

(3) For general damages in a sum according to proof;

(4) For special damages, including consequential and incidental damages, in a sum

according to proof;

(5) For attorney's fees and costs;

(6) For punitive damages;

(7) For interest as allowed by law; and,

(8) For such other legal and equitable relief as this Court deems just and proper.

DATED: August 10, 2018                    By: _____

DWAYNE C. SMITH, Pro Per Plaintiff

DATED: August 10, 2018                    By: _____

LINDA E. SMITH, Pro Per Plaintiff

**VERIFICATION**

I, DWAYNE C. SMITH, am a Plaintiff in the above-entitled action. I have read the Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe them to be true.

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Executed on this _13th_ day of August, 2018, in the County of Alameda, State of California

By: _____
   DWAYNE C. SMITH, Pro Per Plaintiff

31
VERIFIED COMPLAINT

**VERIFICATION**

I, LINDA E. SMITH, am a Plaintiff in the above-entitled action. I have read the Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this _13th_ day of August, 2018, in the County of Alameda, State of California.

By: _Linda E. Smith_

LINDA E. SMITH, Pro Per Plaintiff

32

VERIFIED COMPLAINT

Recording Requested By: Homecomings Financial

Return To: Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 047-427920-5

Prepared By: Homecomings Financial
4350 Von Karman Avenue, Suite 100
Newport Beach, CA 92660

_____[Space Above This Line For Recording Data]_____

# DEED OF TRUST

MIN 10 0 0 62 6 04 74 27 92 056

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JUNE 8TH, 2007 together with all Riders to this document.
**(B) "Borrower"** is

DWAYNE C. SMITH AND LINDA E. SMITH, HIS WIFE, AS JOINT TENANTS

Borrower's address is 1547 KINGSPORT AVENUE, LIVERMORE, CA 94550
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a LIMITED LIABILITY COMPANY
organized and existing under the laws of DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1501

MFCA7720 (09/2005) / 047.427920-5
-6A(CA) (10207).01

Page 1 of 15      Initial

VMP Mortgage forms, Inc.

Lender's address is 4350 VON KARMAN AVENUE, ft 10 0
NEWPORT REACH, CA 926 6 0
(D) "Trustee" is LANDAMERICA SOUTHLAND TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS:
(F) "Note" means the promissory note signed by Borrower and dated JUNE 8TH, 2007 The Note states that Borrower owes Lender FIVE HUNDRED SEVENTY SIX THOUSAND AND
NO/100                                                                                    Dollars
(U.S. $ 576,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JULY 1ST, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" Means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

Lid Adjustable Rate Rider El Condominium Rider      0 Second Home Rider
El Balloon Rider      D Planned Unit Development Rider LI 1-4 Family Rider
0 VA Rider      0 Biweekly Payment Rider      LI Other(s) [specify]

(.1) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final. non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)      "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(0) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials 7

CZ -6A I CA) 1(207)(03                                    Pogo 2 of 16
h1FCA7770 (09/2006) / 047-427920.5

ERT.na rfriNe5 1101

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                                           of ALAMEDA
                              [Type of Recording Jurisdiction]                                          [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number: 097 - 0144 - 038                              which currently has the address of
1547 KINGSPORT AVENUE                                                                              [Street]
LIVERMORE                                                   [City], California 94550          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencu••ered, except for encumbrances

vlers -6A(CA) 107071.01          rove 3 of 15                                    Form 3005 1 /01
.uh0
MFCA7770 (09/2006) / 047-427920.5
                                                                      CERTICIDAOC EATEH

4a-41.

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer,

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and. this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and. then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis, of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held. in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank, Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge, Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Bo .wer a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4,

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire; hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed *the* cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance barrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless *Lender* and *Borrower* otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shalt be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not *be* paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

CD∗6AICA) 102071.01

MFCA7770 (09/2006) / 047-427920-5

Aap 6 al is

Form 3005 1/01

CERP.417.1) TG E7. A "Mt?.

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, *then* Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing orrestoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information)[*] in connection with the Loan, Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) payi g any sums secured by a lien which has priority over this Security Instrument; (b) appearing i'                  , and (c) paying reasonable

Form 3005 1(01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agreeS to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. BorroVier is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements ill not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Bo a ver to any refund.

Initials: 677

rD

tntrx

CZ) -6AICA) (0207).01

MFCA7770 (09/2006) / 047-427920-5

Page 0 or IS

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

C:)-6A(CA) io2o7).ot

MFCA7770 (09/2006) 047.427920.5

Page of 15

CERT TtiA

(F

Cam

11,

to Borrower or any Successor in Interest of Borrower shall' not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co=signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower. who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees- to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney? fees, property inspection and valuation fees, In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection witIf this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender, If any notice required by this Security instrument is also required under Applicable Law, the Applicable
Law
requiremen
t will
satisfy the
correspondi
ng.
requiremen
t under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made d y other information RESPA

itl)-6A(CA) (02071.01

MFCA7770 (09/2006) / 047-427920-5

P108 11 of 16

Form 3005 1101

CEMPEO,I0 11);.

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, haz@dous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

(C)-6A(CA) 02071,01                          Pep 12 of 18                          Form 3005 1101
MFCA7770 (09/2006) / 047-427920-5

Case 4:18-cv-05612-YGR   Document 1-2   Filed 09/13/18   Page 87 of 107

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result In acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable LaW. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to It.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it' Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the 'statement of obligation as p, vided by Section 2943 of the Civil Code of California.

-6A( CA) lozor ▸ .ot                    Pag 13 of 15                                          • Form 3005 1/01

MFCA7770 (09/2006) / 047-427920-5                                                  CfaTt(ini)TO E Cf²

E't

11—⁴

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                                    _____ (Seal)
                                                                                                      -Borrower
                                                                      DWAYNE C. SMITH

_____                                    _____ (Seal)
                                                                                                      -Borrower
                                                                      LINDA . SMITH

_____  (Seal)   (Seal)
                                   -Borrower                                                     -Borrower

_____  (Seal)   (Seal)
                                   -Borrower                                                     -Borrower

_____  (Seal)   (Seal)
                                   -Borrower                                                     -Borrower

-6A(CA) 10207).01                              Page 14 of 16                    Form 3005  1/01
(11
MFCA7770 (09/2006) / 047-427920-5

(Page 40 of 41)

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of '40,*("c ack

On ___kvA.1 10,Q00'1___ , before me, 7s-\kctackcy\ac10/ 100-Irce ug Tu bV
       Date              am and Tido of Officer tag.. Jane Wo, Notary Public

personally    appeared _____
                             hundo) of Signold

                      0 personally known to me

TYA MADONADO
Commission # 1545374
Notary Public - California
Orange County
My Comm. Expires Jan 21, 2009

to 1 a   roved to me on the basis of satisfactory evidence the person(s) whose name(s)' are subscribed to the within instrument and acknowledged to ma that tre4lNthey executed the same in h h /their authorized capacity(les), and that by their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above .
                               Signture of No   tary Public

——————— OPTIONAL ———————
*Though the Information below Is not required by law, It may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

Description of Attached Document
Title or Type of Document: '—.11.11..6., CA

Document Date: _____        Number of Pages: _____

Signer(s) Other Than Named Above: _____

Capacity(les) Claimed by Signer(s)

| Signer's Name: | Signer's Name: |
|---|---|
| O Individual | O Individual |
| O Corporate Officer—Title(s): | O Corporate Officer—Title(s): |
| 0 Partner — 0 Limited 0 General | 0 Partner — 0 Limited 0 General |
| 0 Attorney In Fact | 0 Attorney In Fact |
| O Trustee | O Trustee. |
| O Guardian or Conservator | 0 Guardian or Conservator |
| 0 Other: | 0 Other: |

Top of thumb here                Top of thumb here

Signer Is Representing· _____     Signer Is Representing: _____

02904    I NotaryAs    • 9ffRitA6fOBx20Otiecp/OG33G2      tmNs57    RxtOdReKtO06097

Overbbox:TRUE
i†,71CF C.70.11
.t·
o. —rot 4 4,4Ptl

(Page 41 of 41)

State of California
County of

On                                    before me,                                            personally appeared

, personally known to me
(01 proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

(42D•6A(CA) 102071.01          Papo 15 of 16          ti:taTii:175crTP1'419.1
MFCA7770 (09/2006) / 047.427920-5.                    P.:ZD

# EXHIBIT B



2017040695   02/14/2017 10:32 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:     34.00

4   PGS

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO
Title365
**AZTEC FORECLOSURE CORPORATION**
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012

_____
Space above this line for recorder's use only

APN # 097-0144-038
Property Address:  1547 Kingsport Avenue, Livermore, CA 94550
Trustee Sale No. 16-004721CXE  Title Order No. 730-1613557-70

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

### TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

The amount is **$143,553.64** as of 02/10/17 and will increase until your account becomes current.

1 – Notice of Default

T.S. #: 16-004721CXE
ORDER #: 730-1613557-70
Notice of Default - Aztec

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of the property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc Pass Through Certificates 2007-QH7 c/o Nationstar Mortgage LLC
C/O Aztec Foreclosure Corporation, 3636 N. Central Ave., Suite #400, Phoenix, AZ 85012, (602) 638-5700 or (877) 257-0717.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION

NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Substituted Trustee, or acting as agent for the beneficiary or trustee under a Deed of Trust dated 06/08/07, executed by Dwayne C. Smith and Linda E. Smith, his wife, as joint tenants, as trustor(s), to secure obligations in favor of Mortgage Electronic Registration Systems, Inc. solely as nominee for Homecomings Financial, LLC (f/k/a Homecomings

T.S. #:  16-004721CXE
ORDER #:  730-1613557-70
Notice of Default - Aztec

Financial Network, Inc.), A Delaware Limited Liability Company, as Beneficiary recorded on June 19, 2007 in Instrument No. 2007227875 and thereafter loan modification recorded on 02/23/2012 at recorder's no. 2012061316 of official records in the Office of the Recorder of ALAMEDA County, California, as more fully described on said Deed of Trust.

Including the Note(s) for the sum of $576,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND/OR INTEREST WHICH BECAME DUE 08/01/12 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, TOGETHER WITH LATE CHARGES, IMPOUNDS, INSURANCE PREMIUMS AND/OR OTHER ADVANCES, TAXES, DELINQUENT PAYMENTS ON SENIOR LIENS, ASSESSMENTS, ATTORNEY'S FEES AND/OR TRUSTEE'S FEES, IF ANY, AND COURT RELATED COSTS ARISING FROM THE BENEFICIARY'S PROTECTION OF ITS SECURITY, AND ANY OTHER FEES AND COSTS PERMITTED UNDER THE DEED OF TRUST, PROMISSORY NOTE, AND RELATED DOCUMENTS AND ALL OF WHICH MUST BE CURED AS A CONDITION OF REINSTATEMENT.

That by reason thereof, the present Beneficiary under such Deed of Trust has deposited with Aztec Foreclosure Corporation, a true and correct copy of such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5 or 2923.55 is attached to this notice.

DATE: _3/10/17_

AZTEC FORECLOSURE CORPORATION
As Trustee or acting as Agent for the beneficiary

Kari Sheehan
Assistant Secretary / Assistant Vice President

(Page 1 of 1)

Copy

## Declaration of Mortgage Servicer Pursuant to
## Civil Code §2923.55(c)

Borrower(s):           DWAYNE C SMITH & LINDA E SMITH
Mortgage Servicer:     Nationstar Mortgage
Property Address:      1547 KINGSPORT AVE LIVERMORE CA 94550
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☑ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code §2923.55(f), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

   ☐ An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, beneficiary, or authorized agent.

   ☐ An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐ An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan encumbering the above-referenced property is not secured by a first lien mortgage or first lien deed of trust that secures a loan, or that encumbers real property, described in California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC
Mortgage Servicer

Dated: 12/11/2013

By: _____ 12/11/2013
Name (Print): Tommy Glover

Assistant Secretary

# EXHIBIT C

**Recording Requested By:**

WHEN RECORDED MAIL TO:
Title365
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012



2017116535    05/30/2017 10:01 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:    28.00

2    PGS

Space above this line for recorder's use only

Trustee Sale No. 16-004721 CXE
730-1613557-70
APN 097-0144-038

## NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER:* THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY – PURSUANT TO CIVIL CODE SECTION 2923.3(a)

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/08/07. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **06/27/17** at **12:30 pm**, **Aztec Foreclosure Corporation** as the duly appointed Trustee under and pursuant to the power of sale contained in that certain Deed of Trust executed by **Dwayne C. Smith and Linda E. Smith, his wife, as joint tenants**, as Trustor(s), in favor of Mortgage Electronic Registration Systems, Inc, solely as nominee for Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.), A Delaware Limited Liability Company, as Beneficiary, **Recorded on 06/19/07** in Instrument No. **2007227875 and thereafter loan modification recorded on 02/23/2012 at recorder's no. 2012061316** of official records in the Office of the county recorder of **ALAMEDA** County, California; **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH** (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state), **At the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612**, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California described as:
**1547 KINGSPORT AVENUE, LIVERMORE, CA 94550**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:
**$625,539.44** (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

Page 1 – Notice of Sale

Notice of Trustee's Sale
T.S. #: 16-004721 CXE
ORDER #:    730-1613557-70

The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: _____5-25-17_____

AZTEC FORECLOSURE CORPORATION

_Elaine Malone_
Elaine Malone
Assistant Secretary / Assistant Vice President
Aztec Foreclosure Corporation
3636 N. Central Ave., Suite #400
Phoenix, AZ 85012
Phone: (877) 257-0717 or (602) 638-5700
Fax:  (602) 638-5748
www.aztectrustee.com

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call or visit the Internet Web site, using the file number assigned to this case 16-004721. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

| www.homesearch.com<br>800-758-8052 | Or | Aztec Foreclosure Corporation<br>(877) 257-0717<br>www.aztectrustee.com |
|---|---|---|

# EXHIBIT D



Date: 06/08/18

Property Address: <u>1547 KINGSPORT AVE, LIVERMORE, CA 94550</u>

PROPOSED RELOCATION ASSISTANCE
RE: Foreclosure Sale of the Above-Referenced Property

A foreclosure sale of the above-referenced property has taken place. A request to begin eviction proceedings against all occupants in the property has already been forwarded to our attorney's office.

You may avoid an eviction judgement being rendered against you by entering into an agreement to turn over possession of the property. Nationstar Mortgage LLC, the new owner, may be willing to pay you to vacate the property on a mutually agreeable date. You must contact our real estate agent at the number below within seven (7) business days of the date of this letter if you are interested in pursuing such an agreement. This letter is not a binding offer.

An agreement must be executed and signed by all parties to be valid. Accordingly, if you are interested please call our real estate agent Allan McGurk at (408) 590-1598 (Tammera Hernandez), at (720-387-2068). If you happen to reach the voicemail system please be sure to clearly leave your name, 10-digit phone number and the property address about which you are calling. All calls will be returned as soon as possible.

Please be advised that efforts to obtain possession of the property shall continue until you and all others vacate the property. Contact us should you have any questions.

Relocation Assistance

Nationstar Mortgage LLC

# EXHIBIT C

1  DWAYNE C AND LINDA E SMITH
   1547 Kingsport Ave, Livermore, CA 94550, USA
2  (925) 998-5112
   lsmith5648@aol.com
3
   IN PRO PER
4  DWAYNE C AND LINDA E SMITH

5

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                           COUNTY OF ALAMEDA

9   DWAYNE C. and LINDA E. SMITH,        Case No: RG18916422

10                    Plaintiffs,        NOTICE OF PENDENCY OF ACTION
                                         (CCP Section 405, *et seq.*)
11

12  vs.                                  Complaint Filed:

13
    NATIONSTAR MORTGAGE, LLC, AKA
14  MR. COOPER; AND DOES 1-5
    INCLUSIVE,
15

16                    Defendants.

17

18

19        Notice is hereby given that the above-entitled action is pending in the above-entitled

20  court. The Plaintiff(s) in this action are DWAYNE C AND LINDA E SMITH.  The Defendants

21  are NATIONSTAR MORTGAGE LLC AKA MR. COOPER  (hereinafter, collectively referred

22
    to as "Defendants").
23

24        This action affects title to specific real property identified in the operative complaint

25  ("Complaint"). The Complaint was filed on  *august 13, 2018*  to redress injuries

26  suffered by Plaintiff(s) as a result of Defendants' conduct. Defendants have unlawfully
27

28                                        1

                           NOTICE OF PENDENCY OF ACTION

1 │ attempted to take title to Plaintiffs' real property, and are attempting to deprive Plaintiff(s) of

2 │ Plaintiffs' rightful title to the real property.

3 │     The specific real property affected by this action and referred to herein is situated in the

4 │ State of California, County of Alameda, and described as follows:

5 │

6 │     Assessor's Parcel Number: 97-144-38

7 │     Address: 1547 Kingsport Ave, Livermore, CA 94550, USA

8 │     Please see the legal description attached hereto as Exhibit "A", which is incorporated

9 │ herein by this reference.

10 │

11 │

12 │ DATE: *August 15, 2018*    By: _____

13 │     DWAYNE C. SMITH, Pro Per Plaintiff

14 │

15 │ DATE: *August 15, 2018*    By: _____

16 │     LINDA E. SMITH, Pro Per Plaintiff

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │ 2

NOTICE OF PENDENCY OF ACTION

# EXHIBIT A

ORDER NO. 77530588

**EXHIBIT "A"**

(City of Livermore)

Lot 244, Tract 2914, filed November 14, 1968, In Book 59 of Maps, Pages 34 to 40, Inclusive, Alameda County Records,

3

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

I am over the age of 18 and my home address is 1547 Kingsport Avenue, Livermore, CA 94550

On _August 15th, 2018_, I served the foregoing documents described as **PLAINTIFFS'** *EX PARTE* **MOTION FOR LEAVE TO RECORD NOTICE OF PENDENCY OF ACTION** on all interested Parties:

**Service List Attached**

☐ **BY MAIL** – I deposited such envelope in the mail at Oxnard, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

☐ **BY PERSONAL SERVICE** – I caused such envelope to be delivered.

☒ **BY FACSIMILE** – I faxed said document to the office(s) of the addressee(s) shown above, and the transmission was reported as complete and without error.

☐ **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the email address(es) indicated.

☐ **BY OVERNIGHT DELIVERY** – I deposited such envelope for collection and delivery with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery. They are deposited with a facility regularly maintained for receipt on the same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _August 15, 2018_ at Alameda County, California.

By: _____
DWAYNE C. SMITH, Pro Per Plaintiff

- 1 -
PROOF OF SERVICE

<u>SERVICE LIST</u>

<u>CSC - Lawyers Incorporating Service</u>

2710 Gateway Oaks Drive, #150N

Sacramento, CA 95833

Facsimile: _302 - 636 - 5454_