# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DWAYNE C. SMITH, ET AL.,**<br>Plaintiffs,<br>vs.<br>**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER,**<br>Defendant. | CASE NO. 18-cv-05612-YGR<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 10, 15 |

On August 13, 2018, plaintiffs Dwayne C. Smith and Linda E. Smith (collectively, the "Smiths") proceeding *pro se*,[1] filed, in Superior Court of California, Alameda County, a complaint asserting nine causes of action arising out of an alleged wrongful foreclosure against Nationstar Mortgage, LLC aka Mr. Cooper ("Nationstar") and Does 1-5.[2] (Dkt. No. 1-1 at ECF 2-33 ("Compl.") at 1.) On September 13, 2018, Nationstar removed the action to federal court based on diversity of citizenship. (Dkt. No. 1 ("Removal").)

Now before the Court is plaintiffs' motion to remand the action to state court (Dkt. No. 15 ("Remand")) and Nationstar's motion to dismiss (Dkt. No. 10 ("MTD")). Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court **DENIES** plaintiffs' motion to remand and **GRANTS IN PART** and **DENIES IN PART** Nationstar's motion to dismiss.

---

[1] The Court notes that plaintiffs are now represented as of April 9, 2019. (Dkt. No. 27.)

[2] These claims include: (1) violation of California Civil Code Sections 2923.55 and 2923.5; (2) violation of California Civil Code Section 2924.17; (3) violation of California Civil Code Sections 2924f and 2924b; (4) breach of contract; (5) breach of good faith and fair dealing; (6) fraudulent misrepresentation; (7) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq* ("UCL"); (8) wrongful foreclosure, to set aside trustee sale and injunctive relief; and (9) quiet title. (Compl. at 1.)

## I. BACKGROUND

### A. Relevant Factual Background

Plaintiffs allege as follows:

The Smiths entered into a Deed of Trust (the "DOT" or "Subject Loan") for a total sum of $576,000 on June 8, 2007 in order to purchase a property located at 1547 Kingsport Avenue, Livermore CA, 94550 ("Subject Property"), which served as their primary residence. (Compl. ¶¶ 7-9.) The Subject Loan named the Smiths as the borrowers and non-parties Homecomings Financial, LLC, Mortgage Electronic Registration Systems ("MERS"), and Landamerica Southland Title as the lender, beneficiary, and trustee, respectively. (*Id.* ¶ 9.) Thereafter, the Smiths made regular monthly installment payments pursuant to the DOT. (*Id.*)

At some point after the Smiths entered into the DOT, it appears that "the beneficial interest or servicing was transferred" twice, first to nonparty U.S. Bank and then to defendant Nationstar. (*Id.* ¶ 10.) On or about four years prior to filing of the complaint, the Smiths stopped making payments on the Subject Loan due to financial hardship. (*Id.* ¶ 11.) Both plaintiffs worked in the building industry, in "realtop" and flooring. (*Id.*) In 2008, as a result of changes in the economy, their business ceased making a profit. (*Id.*) Consequently, the Smiths went from a "six-figure income" to less than $20,000 a year, for two years. (*Id.*) Although the Smiths had saved enough money to pay the mortgage for two years, after 2009, it became very difficult to make the payments. (*Id.*) The Smiths focused all available resources to pay their mortgage. (*Id.*) Although the Smiths' business began to improve, it never completely recovered. (*Id.*)

In or about 2013, after the Subject Loan had been assigned to U.S. Bank, U.S. Bank sent the Smiths a letter advising them of a company that could help them through their financial difficulties. (*Id.* ¶ 12.) The Smiths contacted the company and learned that it could help them secure a loan modification for the cost of approximately $1,400 per month. (*Id.*) Thereafter, the Smiths received a phone call from Mr. Balmacoon, who was based in New York City and who received plaintiffs' information from the aforementioned company to which the Smiths were referred by U.S. Bank. (*Id.*) The Smiths began working with Balmacoon at the end of 2013 and paid a $1,000 "start-up fee." (*Id.*) Balmacoon advised the Smiths not to contact U.S. Bank as "it

2

would be too confusing" if both the Smiths and Balmacoon communicated with U.S. Bank. (*Id.*) Plaintiffs followed this advice. (*Id.*)

During this period, the Smiths "were forced to rely on" Balmacoon. (*Id.*) In 2015, plaintiffs "buried eight [8] loved ones," which imposed significant emotional and financial costs. (*Id.*) Every time the Smiths were close to approval for a loan modification, "an occurrence would prevent such approval." (*Id.*) "Plaintiffs were also told that they could not make payments during this time unless they paid the default in full."[3] (*Id.*) In 2017, Balmacoon suggested that the Smiths place the Subject Property in a trust managed by attorneys. (*Id.*) Such a trust would cost $1,200 to form and $300 a month to manage, thereby increasing the Smiths' monthly payments to $800. (*Id.*) Plaintiffs followed Balmacoon's direction, however no trust had been established by the time the Smiths filed the complaint. (*Id.*) Plaintiffs were advised to add their son to the title to the Subject Property, which they did.[4] (*Id.*) Unbeknownst to the Smiths at the time, Balmacoon filed a bankruptcy petition in New York to prevent the Subject Property from proceeding to foreclosure sale. (*Id.*) At some point, the Smiths began receiving notices in the mail informing them of this bankruptcy filing. (*Id.*) From 2013 until the filing of the complaint, plaintiffs continually submitted complete applications for loan modification. (*Id.* ¶ 13.)

On February 10, 2017, Kari Sheehan, an authorized representative for defendants' authorized agent Aztec Foreclosure Corporation ("Aztec"), "executed a fraudulent Notice of Default based upon 2923.55 declaration executed on **December 10, 2013 – nearly 3 ½ years earlier!**" (*Id.* ¶ 14-15 (emphasis in original).) This unlawful Notice of Default was subsequently recorded on February 14, 2017. (*Id.*) The Notice of Default identified the amount in default as $143,553.64 as of the date of the notice. (*Id.*, Ex. B at ECF 51.) On May 27, 2017, Elaine Malone, assistant vice president for Aztec, "executed a fraudulent Notice of Trustee Sale, which was recorded on May 30, 2017." (*Id.* ¶ 15.) "This notice is fraudulent as following a facially

---

[3] The Court notes that it is not clear from the complaint whether plaintiffs were so instructed by Balmacoon, the lender, or someone else. In the event that plaintiffs file an amended complaint, they should clarify.

[4] *See* footnote 1, supra.

3

defective and invalid Notice of Default." (*Id.*) "U.S. Bank and Defendant Nationstar always sent foreclosure notices via certified mail (as required), along with several copies via regular mail." (*Id.* ¶ 16.) However, the Smiths never received any notice in May 2018 regarding the then upcoming trustee sale that took place on or about June 5, 2018. (*Id.*) The Smiths discovered that Nationstar had "mailed some notices to an address in New Jersey" of which plaintiffs had never heard and at which they do not reside. (*Id.* ¶ 22.) Based thereon, the Smiths called Nationstar's representative who said the sale had been cancelled and no sale date was scheduled.[5] (*Id.*)

On or about June 4, 2018, the Smiths and/or their agent spoke with an authorized agent for Nationstar, who advised that a sale was not scheduled to proceed. (*Id.* ¶ 17.) During this conversation, Nationstar's authorized representative did not advise the Smiths that a trustee sale was scheduled to take place and instead "promised . . . that a trustee sale would not take place while [p]laintiffs' loan modification application was being reviewed." (*Id.* ¶ 21.) However, when the Smiths returned home on June 11, 2018 from a short missionary trip, they found a notice posted on their door from Nationstar that stated that their home had been sold. (*Id.* ¶ 17.) The notice of sale estimated the value of the Subject Property to be $825,539.44. (*Id.*, Ex. C at ECF 56.) An unlawful trustee sale occurred on June 5, 2018, by which Nationstar "purchased" the Subject Property via a credit bid. (*Id.* ¶ 18.) "Defendants are now attempting to quickly transfer the Subject Property to a third party in an effort of deprive" the Smiths of the property. (*Id.*) Defendants transferred the Subject Property to Paul Sigh, who, at the time of filing of the complaint, was scheduled to close escrow on or about August 22, 2018. (*Id.*) The Smiths were not provided with the required notice of sale in the manner prescribed by Sections 2924(b) and (f) at any point prior to the unlawful trustee sale. (*Id.* ¶ 19.)

Despite the fact that the trustee sale took place, "there was never any sale of the Subject Property to a bona fide third-party purchaser because" Nationstar was the foreclosing beneficiary. (*Id.* ¶ 20.) Defendants have still attempted to transfer the Subject Property to Singh. (*Id.*) In or

---

[5] The Court notes that it is not entirely clear whether this conversation is the same as the June 4, 2018 conversation discussed the paragraph below. In the event that plaintiffs file an amended complaint, they should clarify.

4

about the end of July or the beginning of August, Singh approached the Smiths at the Subject Property and claimed to be the "new owner." (*Id.*) The Smiths corrected Singh and advised him that a sale had not been completed as of yet. (*Id.*) Singh replied that escrow was scheduled to close soon. (*Id.*) The Smiths then advised Singh of Nationstar's wrongful conduct and that they were in the process of filing suit thereby placing the Subject Property at the center of pending litigation. (*Id.*) Rather than cancelling escrow immediately, Singh has since assumed the risk associated with consummation of a sale of a property that is the subject of a lawsuit. (*Id.*)

Additionally, plaintiffs allege that one or more of the following exceptions to the tender requirement apply: (i) the value of plaintiffs' monetary claims and set-offs against the beneficiary are equal to or greater than the value of the secured debt; (ii) it would be inequitable to impose a tender requirement on plaintiffs under the circumstances, since the foreclosure proceeded pursuant to blatantly fraudulent and unlawful conduct in direct violation of the Civil Code; and (iii) plaintiffs did not rely on equity to challenge the foreclosure, as the foreclosure is statutorily invalid in direct violation of the Homeowner's Bill of Rights. (*Id.* ¶ 23.) Moreover, plaintiffs are willing to tender an amount deemed necessary by the Court in order to proceed with their claims against Nationstar. (*Id.*)

**B. Procedural Background**

On August 13, 2018, the Smiths filed their complaint in Superior Court of California, Alameda County. (*See* Compl.) Then, one month later, Nationstar removed the action to federal court based on diversity of citizenship. (Removal at 2.) Specifically, defendant argued that this action reflects complete diversity of citizenship and an amount in controversy over $75,000. (*Id.* at 2.) Accordingly, Nationstar avers that this Court has original jurisdiction over the case based on diversity jurisdiction pursuant to 28 U.S.C. Section 1332. (*Id.*) Plaintiffs subsequently filed a motion for remand on October 15, 2018.[6] (Remand.) On September 20, 2018, Nationstar filed its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[7] (MTD.)

---

[6] The Court notes that although Nationstar filed an opposition, plaintiffs did not file a reply in support of their motion to remand.

[7] In connection with its motion to dismiss, Nationstar requests that the Court take judicial

5

## II. MOTION TO REMAND

### A. Legal Standard

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (internal citations omitted). Courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[A]ny doubt as to the right of removal in the first instance," should be resolved in favor of the remanding party. *See id.*

### B. Analysis

Diversity jurisdiction requires diversity of citizenship and that "the matter in controversy exceed the sum or value of $75,000, exclusive of interests and costs . . . ." 28 U.S.C. § 1332(a). The amount in controversy for injunctive claims is generally measured by the value of the property that the plaintiff seeks to protect. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 US. 333, 347 (1977).

Here, plaintiffs' complaint seeks rescission of the trustee sale as well as a temporary and permanent injunction preventing defendants from transferring or selling the Subject Property to a third party. (Compl. at 29.) In applying the rule of *Hunt*, the amount placed in controversy by plaintiffs' complaint is at least the value of the Subject Property at the time of the trustee sale, or $825,539.44.[8] (*See* Compl., Ex. C.) Because this amount exceeds the $75,000 jurisdictional

---

notice of a Home Affordable Modification Agreement, recorded in the Official Records of Alameda County of February 23, 2012, relating to the Subject Property. (Dkt. No. 10-1.) The Court **GRANTS** Nationstar's unopposed request. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original). The Court takes only the appropriate evidentiary view of the document.

[8] According to plaintiffs' motion to remand, the object of their lawsuit is lawful review of their loan modification application in accordance with the Subject Loan agreement and applicable law as well as rescission of the trustee sale upon approval of the modification application. (Remand at 7.) In the event that plaintiffs are not approved for a loan modification after a lawful review, they "are amenable to moving out of the Subject Property on an agreed upon date." (*Id.*) Therefore, plaintiffs are asking for, at the very least, a temporary hold on the sale of the Subject

threshold, the Court has original jurisdiction pursuant to Section 1441(a) and removal was proper.[9] *See Graham v. U.S. Bank, N.A.*, No. 13-cv-04613 NC, 2013 WL 2285184, at *3 (N.D. Cal. May 23, 2013); *c.f. Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017) (finding that when plaintiffs in foreclosure cases seek only temporary injunctions to halt property sales, the object of the litigation is the temporary injunction, which is assumed to have a worth less than $75,000).

### III. MOTION TO DISMISS

#### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

Property and review of their loan modification application in order to address the amount of $143,553.64 remaining on the Subject Loan. (*See id.*)

[9] Plaintiffs' assertion in their motion for remand that they will file an amended complaint "expressly stating that they do not seek damages over the sum of $75,000" fails. (Remand at 6.) "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 29 (1938); *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999), opinion amended on denial of reh'g 201 F.3d 1186 (9th Cir. 1999) (finding that to determine the amount in controversy, a court should look to the complaint at the time when the case was removed to federal court and not to amendments thereafter); *see also Gilette v. Peerless Ins. Co.*, No. CV 13-03161 DDP (RZx), 2013 WL 3983872, *4 (C.D. Cal. July 31, 2013) (holding that plaintiff's willingness to stipulate to cap her recovery at $74,999 does not clarify that the amount in controversy was below the jurisdictional limit *prior* to removal).

(2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Moreover, allegations of fraud require a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

*Pro se* pleadings must satisfy the same standard even though courts must construe *pro se* pleadings liberally. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995). The "pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Id.*

**B. Analysis**

Plaintiffs' complaint alleges nine causes of action for: (1) violation of California Civil Code Section 2923.5; (2) violation of California Civil Code Section 2924.17; (3) violation of California Civil Code Sections 2924f and 2924b; (4) breach of contract; (5) breach of good faith and fair dealing; (6) fraudulent misrepresentation; (7) violation of California Business and Professions Code Sections 17200 et seq; (8) wrongful foreclosure, for set aside of trustee sale and injunctive relief; and (9) quiet title. (Compl. at 1.) The Court will address each in turn.[10]

### 1. Violation of Cal. Civ. Code § 2923.5

Section 2923.5 requires a mortgage servicer to contact the borrower "in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower

---

[10] Nationstar's argument that plaintiffs' complaint must be dismissed for failure to allege tender fails. Although Nationstar is correct that plaintiffs' argument that "a general equitable exception" to the tender rules applies here does not persuade because plaintiffs have not sufficiently alleged that any of the recognized exceptions apply, *see* MTD at 3; *see also Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112-13 (2011), plaintiffs have alleged that they "are willing and able to tender[.]" Compl. ¶ 23; *see Schneidereit v. Trust of Scott and Brian, Inc.*, 693 Fed.Appx. 733, 734 (9th Cir. 2017) (finding that a district court properly dismissed a quiet title and gross negligence claim seeking to set aside the trustee's sale, which it treated as wrongful foreclosure claims, because plaintiffs did not allege facts sufficient to show that they tendered *or could have tendered* the full amount of the debt or any facts entitling them to an exception to the tender rule).

8

to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). Plaintiffs allege that Nationstar violated Section 2923.5 by not contacting them as required and failing to provide the required declaration. (Compl. ¶ 26.) However, plaintiffs also allege that the trustee sale has already occurred and assert a claim for wrongful foreclosure. (*Id.* ¶¶ 18, 74-80.) The only remedy available under Section 2923.5 is "a postponement of an impending foreclosure to permit the lender to comply with" the section. *Mabry v. Super. Ct.*, 185 Cal.App.4th 408, 214 (2010). Therefore, as the Subject Property was sold on June 5, 2018, plaintiffs no longer have any remedy under this statute. (*See* Compl. ¶ 26.) Accordingly, the Court **DISMISSES WITH PREJUDICE** plaintiffs' Section 2923.5 claim.

### 2. Violation of Cal. Civ. Code § 2924.17

Cal. Civ. Code § 2924.17 provides, in relevant part, that "a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17(a). Technical non-compliance is insufficient to state a cause of action; a plaintiff must allege a material violation of the statute. *See Cornejo v. Ocwen Loan Servicing, LLC*, 151 F.Supp.3d 1102, 1113 (E.D. Cal. 2015).

Plaintiffs allege that a material violation of the statute occurred when Nationstar (1) failed to verify "whether the [d]efendant had the right to foreclose," and (2) attached a declaration dated in 2013. (Compl. ¶ 33.) "Courts have interpreted the term 'material' to refer to whether the alleged violation affected a plaintiff's loan obligations or the modification process." *Cornejo*, 151 F.Supp.3d at 1113 (collecting cases). Plaintiffs do not allege how either of the violations enumerated in their complaint impacted their *loan obligations* or their *loan modification process*. (*See* Compl.) In fact, plaintiffs allege that "from 2013 to the present day, [they] continuously submitted complete loan modification applications." (*Id.* ¶ 13.) Accordingly, the Court **DISMISSES** plaintiffs' Section 2924.17 claim with leave to amend.

\\

### 3. Violation of Cal. Civ. Code §§ 2924f and 2924b

Section 2923, in relevant part, mandates certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale, and who have requested notice in the statutory manner, that default has occurred, and the foreclosure sale is imminent. Cal. Civ. Code § 2924. These procedures include provision of notice of the upcoming foreclosure sale by certified mail and conspicuous posting on the property to be sold. (*Id.* §§ 2924b, 2924f.) Plaintiffs allege that Nationstar failed to post a copy of the Notice of Trustee's Sale and to send the same to plaintiffs by certified mail. (Compl. ¶ 36.) Plaintiffs further allege that Nationstar denied that a trustee sale was scheduled to proceed when contacted by plaintiffs. (*Id.*) Although Nationstar is correct that "actual receipt by the trustor of either document[, posted or mailed notice,] is not required[,]" plaintiffs have not alleged mere lack of receipt. *Compare* MTD at 6 *with* Compl. ¶ 36; *Knapp v. Doherty*, 123 Cal.App.4th 75, 88 (2004). Because plaintiffs have alleged that Nationstar failed to either post or send via certified mail a notice of the foreclosure sale at issue, the Court **DENIES** Nationstar's motion to dismiss plaintiffs' Section 2924 claim.

### 4. Breach of Contract

To state a breach of contract claim, a plaintiff must assert: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) breach of the terms of the contract; and (4) that the breach caused harm to the plaintiff. *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178 (2008). Plaintiffs allege that Nationstar breached the DOT by forcing them into the foreclosure process despite the fact that they were not in default. (Compl. ¶ 44.) Plaintiffs further allege that Nationstar breached the terms of Paragraph 22 of the DOT specifically by failing to provide them with a notice of default and information regarding the action required to cure prior to acceleration. (*Id*. ¶ 45.)

Nationstar does not contest whether the DOT constitutes a contract. (MTD at 7.) Instead, defendant argues that plaintiffs have admitted to defaulting on their payment obligation and therefore cannot sustain a claim for breach of contract. (*Id.*) Plaintiffs allege that "on or about 4 years ago [they] stopped making payments on the Subject Loan due to" financial hardship. (Compl. ¶ ¶ 11.) However, under California Civil Code Section 2923.6(c), "[i]f a borrower

submits a complete application for a first lien loan modification . . . [the holder of the deed of trust] shall not record a notice of default or a notice of sale, or conduct a trustee's sale, while the complete first lien loan modification is pending" until and unless one of the three exceptions enumerated in the statute occurs. Cal. Civ. Code § 2923.6(c). Here, plaintiffs allege that from 2013 until the filing of the complaint, they continually submitted complete applications for loan modification. (Compl. ¶ 13.) Nationstar does not contend that any of the three exceptions under Section 2923.6(c) has occurred such that the "dual-tracking" provision would not apply. (*See* MTD at 7-8.) For the same reason, Nationstar's argument that plaintiffs "fails to plead any facts establishing that any of the[] alleged damages arise from any cause other than their . . . default" fails. (*See id.* at 8.) Accordingly, the Court **DENIES** Nationstar's motion with respect to plaintiffs' breach of contract claim.[11]

#### 5. Breach of Good Faith and Fair Dealing

The covenant of good faith and fair dealing "not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose."[12] *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093 (2004). Nationstar argues that plaintiffs cannot state such a claim because they have failed to state a claim for breach of contract, they cannot sustain a claim for breach of the covenant of good faith and fair dealing. (*See* MTD at 8.) Although defendant is correct regarding the "black letter law" regarding the relationship between the two claims, for the reasons stated above, plaintiffs have stated a claim for breach of contract regarding the DOT.

---

[11] To the extent plaintiffs allege a breach of contract based on "breach" of the Notice of Default, the Court **DISMISSES WITH PREJUDICE** those claims as the Notice of Default does not constitute a contract.

[12] To the extent plaintiffs allege a breach of covenant of good faith and fair dealing based upon violations of the civil code (*see* Compl. ¶¶ 54(c)-(f)), the Court **DISMISSES WITH PREJUDICE** those claims as the implied covenant of good faith and fair dealing "is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live*, 114 Cal.App.4th at 1094 (emphasis in original).

Accordingly, the Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' claim of breach of the covenant of good faith and fair dealing.

### 6. Fraudulent Misrepresentation

Plaintiffs allege that Nationstar engaged in fraudulent misrepresentation by (1) issuing a Notice of Default that failed to comport with Paragraph 22 of the DOT and was otherwise fraudulent; and (2) advising plaintiffs, through an authorized representative, on June 4, 2018 that the trustee sale of the Subject Property was not then scheduled. (Compl. ¶ 57.)

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001). "[M]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Although plaintiffs do not know the name of the individual with whom they spoke on June 4, 2018, they do allege that he or she was an authorized representative of Nationstar. (Compl. ¶ 57(b).) Moreover, plaintiffs do not, as Nationstar contends, "plead fraud in the alleged inconsistency between the DOT and the NOD [Notice of Default]." (*See* MTD at 9.) Plaintiffs allege that the Notice of Default contained fraudulent misrepresentations of the terms articulated by the DOT. (*See* Compl. ¶ 57(a)(ii).) Therefore, plaintiffs' allegations are not mere conclusory allegations of fraud and do provide Nationstar with notice of the particular misconduct in which they are alleged to have engaged constituting fraud. *See Bly-Magee*, 236 F.3d at 1019. Accordingly, the Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' fraudulent misrepresentation claim.

### 7. Violation of the UCL

The California UCL prohibits acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. The statute "has a broad scope that allows for 'violations of

12

other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically prescribed by any other law'." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002)).

To establish standing under the UCL, a plaintiff must allege that they have "suffered injury in fact and have lost money or property" as a result of the alleged unfair practices. Cal. Bus. & Prof. Code § 17204; *see R&B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal.App.4th 327, 360 (2006). Here, plaintiffs allege that as a result of defendants' "unlawful, unfair and fraudulent acts and practices," including the initiation of allegedly fraudulent foreclosure proceedings, plaintiffs and other California consumers "have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees, other improper fees and charges, and negative credit scores." (Compl. ¶ 72.)

Accordingly, plaintiffs have alleged that they have lost money as a result of defendants' initiation of allegedly fraudulent foreclosure proceedings and therefore incurred damages flowing from defendants' conduct. *See Barrioneuvo v. Chase Bank, N.A.*, 885 F.Supp.2d 964, 977 (N.D. Cal. 2012) (noting that "it is undisputed that foreclosure proceedings were initiated which put [the plaintiffs] interest in the property in jeopardy; this fact is sufficient to establish standing as this Court has previously held"); *also Corral v. Select Portfolio Servicing, Inc.*, No. 14-cv-02251-MEJ, 2014 WL 3900023, at *6 (N.D. Cal. Dec. 19, 2014) (holding that plaintiffs alleging damages "related to the initiation of the foreclosure process, damage to credit, and the costs involved in initiating suit" have alleged that they "lost money as a result of Defendants' alleged violations" of law and therefore established standing under the UCL).

Additionally, for the reasons noted herein, plaintiffs have pled specific facts sufficient to allege violations of other laws that would satisfy the "unlawful" prong of the UCL. *See, supra*, III. B. 3., III. B. 6. Accordingly, the Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' UCL claim.

\\

\\

|   |   |
|---|---|
| 1 | 8. <u>Wrongful Foreclosure</u> |

       Plaintiffs' claim for wrongful foreclosure seeks to set aside the Trustee's Sale on the grounds that Nationstar allegedly failed to provide proper notice, failed to contact plaintiffs prior to recording the Notice of Default, and foreclosed even though plaintiffs were not in default. (Compl. ¶¶ 75-80.) In the instant motion, Nationstar avers that this "claim fails for the same reasons as the causes of actions making identical allegations." (MTD at 11.) However, as noted herein, the Court has found that plaintiffs have sufficiently alleged some of the claims that assert identical allegations to those underlying plaintiffs' claim of wrongful foreclosure. *See, supra*, III. B. 3. Accordingly, the Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' wrongful foreclosure claim.

       9. <u>Quiet Title</u>

       To state a cause of action for quiet title, a plaintiff must allege: (1) a legal description of the property that is the subject of the action; (2) the title of the plaintiff and the basis upon which such title is asserted; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff against the adverse claims. Cal. Civ. Proc. Code § 761.020.

       Nationstar contends that plaintiffs cannot maintain a claim for quiet title because they cannot allege an adverse claim to the title. (MTD at 11-12.) In support thereof, Nationstar points to case law stating that a "deed of trust carries none of the incidents of ownership of the property, other than the right to convey upon default" and therefore a former or present interest therein does not constitute an "adverse claim in the property." (*Id.* (citing *Lupertino v. Carbahal*, 45 Cal.App.3d 742, 748 (1973); *Vega v. JP Morgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1121 (E.D. Cal. 2009); *Ford v. Lehman Bros. Bank, FSB*, No. C 12-00842 CRB, 2012 WL 2343898, at \*14-15 (N.D. Cal. June 20, 2012)).) However, the existence of a purchaser's deed resulting from a foreclosure sale can satisfy the "adverse claim" element of a quiet title action. *Ford*, 2012 WL 2343898, at \*14 (noting that although no claim adverse to plaintiff's title can exist prior to a foreclosure sale because a deed of trust carries none of the incidents of ownership of property, a foreclosure sale can cure this defect) (citing *Dimock v. Emerald Properties LLC*, 81 Cal.App.4th

14

1  868, 878-79 (2000)).

2  Nationstar further argues that plaintiffs lack standing because a borrower may not maintain a quiet title action against a mortgagee without first paying the outstanding debt on which the subject mortgage is based. (MTD at 12 (citing *Miller v. Provost*, 26 Cal.App.4th 1703, 1707 (1994) (noting that "a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee"); *Kelley v. Mort. Elec. Registration Sys., Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 20019) (noting that in order to maintain an action for quiet title, plaintiffs must allege that they are "the rightful owners of the property, i.e. that they have satisfied his obligations under the Deed of Trust")).)

Here, plaintiffs do not allege that they have tendered the outstanding amount he borrowed against the Subject Property and therefore the satisfied their obligations under the DOT. (*See* Compl.) However, as noted herein, plaintiffs do allege that they "are willing and able to tender[,]" which suffices. *Id.* ¶ 23; *see Ford*, 2012 WL 2343898, *12 ("Plaintiff lacks standing to quiet title on the subject property because she has not tendered payment or alleged the ability to tender payment."); *see also Kozhayev v. America's Wholesale Lender*, No. CIV S-09-2841, 2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010) ("Here, plaintiffs' complaint does not allege that they have tendered, or are able to tender, the debt secured by the subject property."). Accordingly, the Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' claim for quiet title.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** plaintiffs' motion to remand to the Superior Court of California, County of Alameda and **GRANTS IN PART** and **DENIES IN PART** Nationstar's motion to dismiss as noted below.

1. The Court **GRANTS** Nationstar's motion to dismiss with respect to, and **DISMISSES WITH PREJUDICE,** plaintiffs' Section 2923.5 claim.

2. The Court **DISMISSES** plaintiffs' Section 2924.17 claim with leave to amend to the extent that they can allege how either of the violations enumerated in their complaint impacted their *loan obligations* or their *loan modification process*.

3. The Court **DENIES** Nationstar's motion to dismiss plaintiffs' Section 2924 claim.

15

4. The Court **DENIES** Nationstar's motion to dismiss plaintiffs' breach of contract claim.
5. The Court **DENIES** Nationstar's motion to dismiss plaintiffs' claim of breach of the covenant of good faith and fair dealing with leave to amend to the extent that they can allege a breach of contract claim.
6. The Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' fraudulent misrepresentation claim.
7. The Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' UCL claim.
8. The Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' wrongful foreclosure claim;
9. The Court **DENIES** Nationstar's motion to dismiss with respect to plaintiffs' claim for quiet title.

To the extent that plaintiffs have a basis for filing an amended complaint, they shall so file by **Friday, May 17, 2019** or shall file a notice that they rest on the current complaint. Defendants shall respond fourteen (14) days after plaintiffs' filing.

This Order terminates Docket Numbers 10 and 15.

**IT IS SO ORDERED.**

Dated: April 18, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**